**METRO LEASING AND DEVELOP-MENT CORPORATION; East Bay Chevrolet Company, A Corporation, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 02–73933.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2004.

Filed July 23, 2004.

Burgess J.W. Raby, Raby Law Office, Tempe, AZ, for the petitioners-appellants.

Andrea R. Tebbets, Department of Justice, Tax Division, Washington, DC, for the respondent-appellee.

Before SCHROEDER, Chief Judge, TALLMAN and CALLAHAN, Circuit Judges.

TALLMAN, Circuit Judge.

This appeal involves the 1995 federal tax return filed by the Metro Leasing and Development Corporation and the East Bay Chevrolet Company (collectively "Metro Leasing"), two small, closely-held California corporations. We must decide whether the United States Tax Court properly determined the amount of a corporate officer's salary that Metro Leasing may deduct as a reasonable business expense under 26 U.S.C. § 162(a)(1). We affirm because the Tax Court did not clearly err when it adjusted the amount of this deduction. See *Elliotts, Inc. v. Comm'r*, 716 F.2d 1241, 1245 (9th Cir. 1983).

We must also resolve when a paid, but contested, federal income tax accrues for purposes of the accumulated earnings tax penalty under 26 U.S.C. § 535(b)(1). This section provides that, when calculating the "accumulated taxable income" to which the tax is applied, a corporate taxpayer may deduct only those federal income taxes that had accrued in the taxable year in question. Here, the Tax Court did not permit Metro Leasing to deduct a contested tax liability that it paid in 2001 while its appeal in the Tax Court was pending. This presents a question of first impression in our circuit. We decline to follow the Fifth Circuit's decision in *J.H. Rutter Rex Mfg. Co. v. Comm'r*, 853 F.2d 1275 (5th Cir.1988), and hold that a contested tax liability that is paid before the legal contest is resolved does not accrue in the taxable year in which it was originally assessed. We affirm the Tax Court's ruling on this issue as well.

I

Mr. George Valente owned 100% of Metro Leasing's common stock and served as its director. When he fell ill in 1995, his wife Lena served as the president. Despite his illness, Mr. Valente remained actively involved in the business. The Tax Court found that he continued to make most of the business decisions, which Mrs. Valente then carried out. Mr. Valente determined his salary each year based on the profitability of the business, and he and his wife were paid an undivided amount to compensate them for their joint efforts. Metro Leasing did not issue shareholder dividends from 1985–1987 or

from 1994–1996, though dividends ranging from $10,000 to $60,000 were paid to Mr. Valente, the sole shareholder, during 1988–1993. Metro Leasing's only other employee during this time was a corporate secretary who maintained the company's financial records.

Metro Leasing's business ventures included Mr. Valente's consultation to a San Francisco Bay Area automobile dealership he once owned, as well as the ownership and lease of real property, buildings, and automobiles. One key transaction in this appeal is Metro Leasing's January 1995 sale of a piece of real property in South San Francisco on an installment basis, which resulted in a mortgage receivable of $2,193,253 secured by the property itself.

In 1995, Metro Leasing paid the Valentes a salary of $240,435, which included a year-end bonus of $180,435. The company then deducted their compensation on its 1995 federal income tax return as a reasonable business expense under 26 U.S.C. § 162(a)(1).[1] Metro Leasing's 1995 return reported a total income of $898,479 from interest, rents, net capital gains, late payment fees, and net gain from the sale of real property. The company paid only $2,674 in federal taxes that year.

In general, corporations may not deduct the dividends they pay to shareholders from their federal income tax returns, and shareholders are taxed on the dividends they receive. For many small corporations in which the shareholders are also employees or officers, this creates an incentive to either retain profits or to pay them out as salary rather than as dividends. To discourage businesses from sheltering potential tax revenue in this manner, the Internal Revenue Code permits corporations to deduct only reasonable amounts for employee salaries, see id. § 162(a)(1), and taxes any unreasonable accumulation of earnings, see id. § 531. In February 1999, the Commissioner of Internal Revenue ("Commissioner") issued a statutory notice of deficiency to Metro Leasing regarding its 1995 income tax return, citing both of these concerns.

First, after examining corporate documents and comparing data about corporate officers' salary levels in similar equipment-leasing and rental/real estate businesses, the Commissioner determined that the Valentes had been paid an unreasonable or excessive salary under § 162(a)(1) and concluded that Metro Leasing should be allowed to deduct only $76,800 as a reasonable amount for officer compensation that year. In addition, the Commissioner assessed an accumulated earnings tax pursuant to § 531,[2] finding that Metro Leasing was a "mere holding or investment company" that had unreasonably accumulated its earnings and income for the purpose of avoiding shareholder income tax. See id. § 533(b).

Metro Leasing appealed the Commissioner's decisions to the United States Tax Court. *Metro Leasing & Dev. Corp. v. Comm'r*, T.C. Memo.2001–119, 81 T.C.M. (CCH) 1644 (2001) (hereinafter "*Metro Leasing I* "). The Tax Court agreed that the Valentes' salaries were unjustified in light of the actual work they had per-

---

**1.** A corporate taxpayer may deduct the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," including "a reasonable allowance for salaries or other compensation for personal services actually rendered[.]" 26 U.S.C. § 162(a)(1).

**2.** The accumulated earnings tax is a penalty imposed on the portion of a corporation's earnings and profits that has been accumulated in excess of reasonable business needs for the purpose of avoiding the taxes owed when earnings are distributed to shareholders as dividends. *See* 26 U.S.C. §§ 531–537.

formed for Metro Leasing in 1995, and thus could not be completely deducted. T.C. Memo.2001–119 at 21. However, because it found that their efforts in the sale of some assets had contributed to a measurable increase in Metro Leasing's income that year, the court added $12,950 to the Commissioner's $76,800 figure (resulting in a total allowed deduction of $89,750). *Id.* at 22–24. The court next agreed that Metro Leasing was a "mere holding company" under § 553(b) and was thus properly subject to the § 531 accumulated earnings tax in the amount of $55,396. *Id.* at 27.

In August 2001, approximately three months after the Tax Court's initial decision, Metro Leasing tendered a payment of $326,932 to cover any income taxes and accumulated earnings tax it would be found to owe.[3] In September 2001, following Tax Court Rule 155,[4] Metro Leasing and the Commissioner both submitted proposed computations of Metro Leasing's accumulated income tax to the Tax Court for its review.

Not surprisingly, the parties provided different calculations of Metro Leasing's accumulated taxable income under § 535. The Commissioner permitted Metro Leasing to deduct only the taxes the company initially paid in 1995 ($2,674), while Metro Leasing sought to also deduct the $326,932 payment it had made in August 2001. *See* 26 U.S.C. § 535(b)(1) (permitting corporations to deduct from their accumulated

taxable income any federal income taxes that had accrued during the taxable year). Because the parties disagreed about the proper calculation, the Tax Court also reviewed this dispute. *See* Tax Ct. R. 155(b) and (c).

In a supplemental opinion, the Tax Court rejected Metro Leasing's proposed computation. *Metro Leasing & Dev. Corp. v. Comm'r,* 119 T.C. 8, 2002 WL 1575753 (2002) (hereinafter *"Metro Leasing II"*). The court declined to follow the Fifth Circuit's decision in *J.H. Rutter Rex Mfg. Co. v. Comm'r,* 853 F.2d 1275 (5th Cir.1988), and did not allow Metro Leasing to deduct its paid, yet still contested, tax liability for 1995. *See Metro Leasing II,* 119 T.C. at 17.

Metro Leasing now appeals the Tax Court's initial decision regarding the amount of reasonable compensation for the Valentes' services that may be deducted (*Metro Leasing I* ), and it also appeals the Tax Court's subsequent review of the proper calculation of the accumulated earnings tax under § 535(b) (*Metro Leasing II* ). We have jurisdiction under 26 U.S.C. § 7482.

## II

### A

■ The reasonableness of an executive officer's compensation is a factual determi-

---

**3.** According to the Commissioner, Metro Leasing owed a deficiency of $110,203 in income taxes and $55,396 for accumulated earnings tax for 1995. Subtracting the $2,674 payment that Metro Leasing had sent with its 1995 return, the Commissioner determined that the corporation's total deficiency owed for 1995 was $162,925. Because Metro Leasing paid $326,932 in August 2001, it is entitled to receive a refund for the overpayment.

**4.** Tax Court Rule 155(a) provides:

[w]here the Court has filed or stated its opinion determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court's determination of the issues, showing the correct amount of the deficiency, liability, or overpayment to be entered as the decision.

Tax Ct. R. 155(a). The rule prescribes different post-trial procedures depending on whether the parties agree about the proper computations.

nation that we review for clear error. *LabelGraphics, Inc. v. Comm'r,* 221 F.3d 1091, 1094–95 (9th Cir.2000); *accord Pacific Grains, Inc. v. Comm'r,* 399 F.2d 603, 605 (9th Cir.1968) ("What constitutes reasonable compensation to a corporate officer is a fact question which must be determined in light of all of the evidence."). Applying this very deferential standard of review, we will not reverse unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Only the Tax Court's definition of the factors used to determine reasonableness is reviewed de novo. *LabelGraphics, Inc.,* 221 F.3d at 1094.

### B

■ To assess whether the Valentes' salaries were reasonable under § 162(a)(1), the Tax Court applied the five-factor analysis we established in *Elliotts, Inc. v. Comm'r,* 716 F.2d 1241 (9th Cir.1983), by addressing: (1) the Valentes' role in the corporation; (2) the salaries paid by similar companies for like services; (3) Metro Leasing's character and condition; (4) any conflicts of interest in which Metro Leasing may be disguising non-deductible shareholder dividends as salary; and (5) the internal consistency of the compensation plan. *See Metro Leasing I,* T.C. Memo.2001–119 at 10–16 (following *Elliotts, Inc.,* 716 F.2d at 1245–48).

In addition, the Tax Court noted that in *Elliotts, Inc.,* we recognized that "it is helpful to consider the matter from the perspective of a hypothetical independent investor[,]" by asking "whether an inactive, independent investor would be willing to compensate the employee as he was compensated." *Id.* at 17 (citing *Elliotts, Inc.,* 716 F.2d at 1245). Unlike other circuits that rely primarily on this "independent investor" test, *see Exacto Spring Corp. v. Comm'r,* 196 F.3d 833, 838 (7th Cir.1999), or use the perspective of an independent investor as the "lens" through which the other factors are viewed, *see Rapco, Inc. v. Comm'r,* 85 F.3d 950, 954–55 (2d Cir.1996), our approach deems none of these factors to be decisive or controlling. *See Elliotts, Inc.,* 716 F.2d at 1244; *see also* William Barnard, *The Unreasonable Compensation Issue Rises From the Dead and Takes on the Independent Investor,* 93 J. TAX. 356, 365–66 (2000) (comparing our multi-factor test to the approach adopted by the Seventh Circuit in *Exacto Spring* ). When considering the perspective of an independent investor, reviewing courts should examine the "nature and quality of the services" a corporate officer provides, "as well as the effect of those services on the return the investor is seeing on his investment." *Elliotts, Inc.,* 716 F.2d at 1245.

■ After examining all of these factors, the Tax Court agreed with the Commissioner that Metro Leasing's claimed $240,435 deduction for the Valentes' compensation was excessive in relation to the work they had actually performed in 1995. *Metro Leasing I,* T.C. Memo.2001–119 at 23. Metro Leasing does not dispute this conclusion. However, the court then determined that Metro Leasing was entitled to a small increase ($12,950) from the amount the Commissioner had determined was reasonable ($76,800), to "reflect the increase in income generated by the Valentes during 1995[.]" *Id.* Metro Leasing now challenges the figures the trial court used to calculate this small increase, contending that they do not comply with the *Elliotts, Inc.,* independent investor test.

The court explained that this additional deductible amount was calculated as follows: first, it subtracted Metro Leasing's average income over the past three years ($626,211) from the income that it reported

on its 1995 tax return ($898,479) to find that its income in 1995 was $272,268 greater than its average yearly earnings in the recent past. *Id.* at 22 n. 6. However, the court noted that this figure included $246,346 worth of income from recapture of depreciation, so it excluded that amount. *Id.* It then roughly divided by half the remaining increase in income ($25,922) to reach a bonus of $12,950. *Id.* at 23. The court noted that this amount was simply an approximation because "[u]nfortunately, the parties did not provide the Court with appropriate expert testimony or some methodology by which to decide the quantum of compensation (bonus) to be attributed to the results obtained by the Valentes' efforts." *Id.* at 22–23.

Although Metro Leasing does not object to the court's basic methodology, it claims that the court failed to properly account for proceeds from the corporation's sale of its South San Francisco property in 1995, which resulted in a taxable gain of $1,809,342.[5] Metro Leasing contends that instead of looking to its 1995 tax return to determine the corporation's gain from that sale, the court should have used the figures that would matter to an independent investor: the corporation's financial accounting statements.

The gain from the sale of this property is counted differently for tax and financial reporting purposes. From a tax perspective, Metro Leasing's total $1,809,342 gain on the sale of the South San Francisco property was not taxed all at once in the year of the sale. Instead, the corporation was taxed annually on the installment payments it received from the property's buyer during each year.[6] In 1995, the property's buyer made payments totaling $28,376, of which only $20,303 was required to be reported as taxable income. Therefore, for tax purposes only a small amount of gain from this sale counted towards Metro Leasing's income in 1995.

In contrast, for financial accounting purposes Metro Leasing recognized and reported as earned income the full $1,809,342 gain in 1995 because the corporation employs the accrual method of accounting, which counts income at the time of sale instead of when the buyer's installment payments are actually received. Metro Leasing reasons that because the Tax Court was applying an "independent investor" test, it should have looked at the large gain reported in the corporation's 1995 financial accounting statement because that is what an independent investor would

---

5. Metro Leasing arrived at this figure by starting with the property's sale price ($2,193,253) and subtracting the adjusted basis in the property and the expenses of its sale.

6. Corporate taxpayers can choose to use either the accrual method of accounting (which counts income at the time of sale instead of when payments are received) or the cash receipts and disbursement method (which counts income when payments are actually received). *See* 26 U.S.C. § 446(c). Metro Leasing is an accrual basis taxpayer. Under a special installment sale reporting rule, accrual method taxpayers are permitted to count the income from installment sales as the payments are gradually received. This rule helps small business owners by spreading

out their tax obligations over a longer period of time.

Congress repealed this rule in Section 536(a) of the Ticket to Work and Work Incentives Improvement Act of 1999, Pub.L. No. 106–170, 113 Stat. 1860 (1999). This change amended 26 U.S.C. § 453(a) to require accrual basis taxpayers to report as income all gain realized from the installment sale of property, even if the proceeds of that sale would not be received until future tax years. The repeal affected only sales made after December 16, 1999, so it does not alter the analysis here. After an outcry by small corporate taxpayers, Congress has since reinstated the old rule. *See* Section 2 of the Installment Tax Correction Act of 2000, Pub.L. No. 106–573, 114 Stat. 3061 (2000).

have done.[7] *See Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 542, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979) (noting that tax return income figures are not typically used by investors to measure a company's annual performance).

However, Metro Leasing fails to recognize that the perspective of an independent investor is but one of many factors that are to be considered when assessing the reasonableness of an executive officer's compensation. *See Elliotts, Inc.*, 716 F.2d at 1245. The Tax Court adequately addressed this factor by examining, in great detail, how an outside investor would have viewed the Valentes' efforts that year and the income resulting from the work they actually performed. *See Metro Leasing I*, T.C. Memo.2001–119 at 17–24. Because its calculation of the $12,950 bonus amount was simply a rough approximation designed to give some credit for the results of the work the Valentes performed in 1995, we cannot conclude that the Tax Court clearly erred by permitting Metro Leasing to deduct this additional portion of the Valentes' salary. *See LabelGraphics, Inc.*, 221 F.3d at 1100.

Metro Leasing also contends that the court erred by failing to include, as part of the company's profits for 1995, the $246,346 that it characterized as "recapture of depreciation." The court did not count this amount as part of Metro Leasing's income for 1995 because it could not be attributed to any work actually performed by Mr. and Mrs. Valente, and the court was attempting to calculate how much additional income the Valentes' efforts had actually produced. *Metro Leasing I*, T.C. Memo.2001–119 at 22 n. 6. It did not clearly err by excluding this amount.

After a thorough analysis in which it examined all the factors required by *Elliotts, Inc.*, the Tax Court made a reasonable calculation of the proper deduction Metro Leasing may make for the Valentes' compensation. Because we are not left with a "definite and firm" conviction that an error was made, *United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. 525, we affirm the court's decision.

### III

### A

■ We next consider the Tax Court's determination that Metro Leasing may not deduct the 2001 payment of its contested 1995 tax deficiency as an accrued federal income tax under 26 U.S.C. § 535(b)(1). We review de novo the Tax Court's interpretation of the Internal Revenue Code and related regulations. *See Boeing Co. v. United States*, 258 F.3d 958, 962 (9th Cir. 2001).

### B

In 1995, 26 U.S.C. § 531 imposed a 39.6% tax on the amount of income that a

---

7. The Commissioner contends that Metro Leasing waived this issue below by incorporating the Tax Court's calculation of reasonable compensation into its Rule 155 computation. However, Rule 155(c) provides that: [a]ny argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration. Tax Ct. R. 155(c). Metro Leasing was bound by this rule to use the trial court's findings in its proposed computation, whether it agreed with those figures or not. Using the Tax Court's findings for this purpose did not waive Metro Leasing's right to challenge their validity on appeal.

corporation had unreasonably accumulated (known for purposes of the Internal Revenue Code as the corporation's "accumulated taxable income"). 26 U.S.C. § 531 (1995).[8] This accumulated earnings tax is a penalty imposed on corporations that are formed for the purpose of avoiding income tax by permitting their earnings and profits to accumulate, instead of distributing them as shareholder dividends. 28 U.S.C. § 532(a). In essence, it is designed to force businesses to distribute any excess profits they do not need for normal business operations so shareholders can then receive them as income and be taxed on the dividends received. *Helvering v. Chi. Stock Yards Co.*, 318 U.S. 693, 699, 63 S.Ct. 843, 87 L.Ed. 1086 (1943). The § 531 tax percentage is applied to a corporation's accumulated taxable income, a figure that is calculated by making several adjustments to regular taxable income. *See* 26 U.S.C. § 535 (listing various deductions and adjustments).

Metro Leasing tendered a $326,932 payment on August 13, 2001, after the *Metro Leasing I* decision issued but while the case was still pending before the Tax Court. This payment was intended to cover any deficiency the corporation might be found to owe for 1995. The parties then submitted proposed computations of Metro Leasing's accumulated earnings tax pursuant to Tax Court Rule 155. Metro Leasing's computation deducted this 2001 payment, but the Commissioner's did not. Metro Leasing's appeal requires us to decide whether this paid, but still contested, income tax deficiency may be deducted from Metro Leasing's accumulated taxable

income under 26 U.S.C. § 535(b)(1). This is purely a question of statutory interpretation.

■ "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). When a statute's text contains undefined terms, we construe them in accordance with their ordinary meanings. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

Section 535(b)(1) provides:

(b) Adjustments to taxable income.— For purposes of subsection (a) [defining "accumulated taxable income"], taxable income shall be adjusted as follows:

(1) Taxes.—There shall be allowed as a deduction Federal income and excess profits taxes and income, war profits, and excess profits taxes of foreign countries and possessions of the United States ... accrued during the taxable year[.]

26 U.S.C. § 535(b)(1). We must interpret the phrase "accrued during the taxable year" to determine whether Metro Leasing's 1995 tax liability that was paid in 2001 qualifies as such.

The ordinary meaning of this statutory language has been well-established in the tax context for many years. Basic principles of accrual accounting were first set forth by the United States Supreme Court in *United States v. Anderson*, 269 U.S.

---

**8.** Section 531 has since been amended twice. From 1993 to 2001, the accumulated earnings tax was equal to 39.6% of a corporation's accumulated taxable income. This rate was amended by the Economic Growth and Tax Reconciliation Act of 2001, Pub.L. No. 107–16, § 101(c)(4), 115 Stat. 38 (2001), to equal

the highest individual income tax rate. Recently, the Jobs and Growth Tax Relief Reconciliation Act of 2003, Pub.L. No. 108–27, § 302(e)(5), 117 Stat. 752 (2003), again amended the rate to equal 15% of a corporation's taxable income.

422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). The Court held that before an expense becomes deductible, all events which fix the amount and the taxpayer's unconditional obligation to pay must have occurred. *Id.* at 440–41, 46 S.Ct. 131.

In 1984 this "all events test" was engrafted into the Internal Revenue Code. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 91(a), 98 Stat. 494 (1984), *codified at* 26 U.S.C. § 461(h). In general, an accrual basis taxpayer may not deduct an expense until (1) all events have occurred that determine the fact of liability; (2) the amount of the liability can be determined with reasonable accuracy; and (3) economic performance or payment has occurred. *See* 26 U.S.C. § 461(h); *see also* Treas. Reg. § 1.461–1(a)(2) (reflecting these three elements in the codified version of the all events test).

■ Under the third factor of the test, the time when economic performance of a tax liability has occurred is when the "tax is paid to the governmental authority that imposed the tax." Treas. Reg. § 1.461–4(g)(6); *see also* 26 U.S.C. § 461(h)(2)(D) (permitting the Secretary of the Treasury to prescribe regulations for any liabilities not specifically listed in § 461(h)(2)(A)-(C)). If a taxpayer chooses to pay an income tax deficiency rather than challenge it, the "all events" test is considered to be met at the close of the deficiency year. *See Lutz v. Comm'r*, 396 F.2d 412, 414 (9th Cir.1968) (adopting *Dravo Corp. v.*

*United States,* 172 Ct.Cl. 200, 348 F.2d 542 (1965)). In contrast, when a taxpayer contests a tax liability in court, the all events test is not satisfied until the legal challenge is resolved, because until then the amount of the liability and the obligation to pay it are not certain. *Dixie Pine Prods. Co. v. Comm'r,* 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 270 (1944).

In 1961, the Supreme Court extended the all events test to taxpayers who had paid, but continued to contest, a tax liability. *See United States v. Consol. Edison Co.,* 366 U.S. 380, 391–92, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961). Shortly thereafter, Congress carved out an exception to *Consolidated Edison* by permitting contested taxes to be deducted in the year of payment if certain criteria are met, even if the taxpayer's legal dispute is not conclusively resolved until later. 26 U.S.C. § 461(f).[9] As defined by the Supreme Court and Congress, traditional principles of accrual can be summarized as follows: the all events test is not met with respect to a contested tax liability—and that liability has not accrued—until the year in which the legal contest is finally resolved. However, if the contested liability is paid *before* the legal contest concludes, the liability may be deductible in the year of payment pursuant to 26 U.S.C. § 461(f). *See Metro Leasing II,* 119 T.C. at 23 (Halpern, J., concurring).

The Eighth Circuit was the first of our sister courts to conclude that the all events

---

**9.** Section 461(f) provides that a taxpayer may take a deduction in the year of a transfer equal to the amount transferred if:

(1) the taxpayer contests an asserted liability,

(2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,

(3) the contest with respect to the asserted liability exists after the time of the transfer, and

(4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer[.]

26 U.S.C. § 461(f); *see also* Treas. Reg. 1.461–2(a)(1). A separate treasury regulation defines a legal "contest." Treas. Reg. 1.461–2(b)(2) (requiring a "bona fide dispute as to the proper evaluation of the law or the facts necessary to determine the existence or correctness of the amount of an asserted liability.")

test and traditional principles of accrual applied to statutory language similar to that found in § 535(b)(1). In *Estate of Goodall v. Comm'r*, 391 F.2d 775 (8th Cir. 1968), the court considered 26 U.S.C. § 102(d)(1)(A) (1939), which permitted a deduction for accrued federal income taxes when computing an element of the former version of the accumulated earnings tax. *Id.* at 799–800; *see also Metro Leasing II*, 119 T.C. at 25 (Halpern, J., concurring) (noting that § 102 (1939) was a precursor to § 535). Relying on *Dixie Pine*, the *Estate of Goodall* court held that the all events test should apply when determining whether a corporation's federal income taxes had "accrued during the taxable year." 391 F.2d at 800. Relying in turn on *Estate of Goodall*, the Tax Court has held that *Dixie Pine* and its progeny should apply to the accrued income tax deduction under § 535(b)(1), so that the meaning of "accrued" is consistent with other cases. *See Doug–Long, Inc. v. Comm'r*, 73 T.C. 71, 77–78, 1979 WL 3697 (1979).

Given the authorities discussed above, we agree with the Commissioner that, unless some exception applies, *see infra* Part III.C, the phrase "accrued during the taxable year" in § 535(b)(1) should be interpreted in accordance with these longstanding principles.

Because the statutory language is not ambiguous, there is no need to rely on the Department of Treasury's regulations or administrative rulings that interpret § 535.

*See Chevron U.S.A., Inc., v. Natural. Res. Def. Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that courts should defer to an administrative agency's interpretation only when the statute is silent or ambiguous). However, we do note that our conclusion is consistent with Treasury Regulation 1.535–2(a)(1), which reads in relevant part:

> The [§ 535(b)(1)] deduction is for taxes accrued during the taxable year, regardless of whether the corporation uses an accrual method of accounting, the cash receipts and disbursements method, or any other allowable method of accounting. *In computing the amount of taxes accrued, an unpaid tax which is being contested is not considered accrued until the contest is resolved.*

*See* Treas. Reg. 1.535–2(a)(1) (emphasis added).[10] Though the last sentence of this regulation is silent as to the treatment of *paid* but contested taxes, as we have in this case, this language does seem to apply *Dixie Pine* to situations involving unpaid taxes. The Internal Revenue Service has also concluded that the all events test should apply to § 535(b)(1), having issued a ruling that unpaid federal income taxes are only deductible under that section in the year that the contest is resolved, not the year in which they were originally assessed. *See* Rev. Rul. 72 306, 1972–1 C.B. 155 (1972).[11]

## C

Notwithstanding the clear meaning of these traditional principles of accrual and

---

**10.** The Tax Court has upheld this sentence as a valid interpretation of § 535. *Doug–Long, Inc.,* 73 T.C. at 81–82 (upholding the regulation as reasonable and consistent with the purposes of the Internal Revenue Code). Because we conclude that meaning of the statute is clear, we need not decide whether this regulation should be upheld. *See Nat'l Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979) (requiring us to uphold regulations

that are in harmony with the statute they purport to interpret).

**11.** We also need not decide the degree of deference that must be given to this administrative ruling under *United States v. Mead Corp.,* 533 U.S. 218, 234, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (citing *Skidmore v. Swift Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

their logical application to § 535(b)(1), Metro Leasing urges us to read the statute to permit deductions for taxpayers who pay their contested deficiencies before the legal contest has concluded. This same argument was first considered by the Tax Court in *J.H. Rutter Rex Mfg. Co. v. Comm'r,* 53 T.C.M. (CCH) 1125 (1987). In that case, the Commissioner assessed tax deficiencies for 1977 and 1978, which the taxpayer proposed to pay in 1987 before the entry of decision. *Id.* Consistent with *Dixie Pine* and *Estate of Goodall,* the Tax Court concluded that traditional concepts of accrual should apply to bar deduction of this payment from the computation of the taxpayer's accumulated taxable income under § 535(b)(1). *Id.*

However, on appeal the Court of Appeals for the Fifth Circuit reversed. *J.H. Rutter Rex Mfg. Co. v. Comm'r,* 853 F.2d 1275 (1988). After recognizing that traditional principles of accrual should apply, *see id.* at 1295–96, the *Rutter Rex* court agreed that these taxes were "contested" but questioned whether they had accrued (1) in 1977 and 1978, the years they were assessed and attributed; (2) in 1987, the year of payment; or (3) sometime in the future when the legal contest would be conclusively resolved by the exhaustion of appellate remedies. *Id.* at 1296. Concluding that the Tax Court had read § 535(b)(1) too narrowly, the Fifth Circuit decided that the tax deficiency at issue accrued in the year in which it was originally assessed. *Id.* at 1297–98.

The Fifth Circuit's conclusion was based primarily on equitable considerations. It first noted that the accumulated earnings tax was a penalty that must be strictly construed, *id.* at 1296 (citing *Ivan Allen Co. v. United States,* 422 U.S. 617, 626, 95 S.Ct. 2501, 45 L.Ed.2d 435 (1975)), and emphasized that it would be inconsistent and unfair to disallow a deduction for tax-

payers who are willing to pay the disputed amount while their appeals continue. *Id.* The court concluded that there was no evidence that Congress intended this inequitable result. *Id.* The court also relied on the final sentence of Treas. Reg. 1.535–2(a)(1), noting that while the regulation specifically mentions *unpaid* tax deficiencies, it says nothing about *paid* deficiencies. *Id.* at 1297.

Furthermore, the Fifth Circuit did not agree that the all events test and traditional principles of accrual should be "indiscriminately" applied when determining a corporation's accumulated taxable income, because doing so would lead to an "an overt upward distortion in the company's accumulated taxable income that has no basis in economic reality." *Id.* Not permitting a deduction for these paid but contested taxes, the court reasoned, would cause a corporation to pay accumulated earnings tax on money that it had already paid to the Internal Revenue Service. *Id.* Therefore, the court concluded that a distinction from general accrual rules should be made to "better determin[e] the actual economic reality of the corporation for the year at issue[,]" *id.,* or else the accumulated earnings tax would "become unfair and oppressive." *Id.* at 1298. The Fifth Circuit emphasized that its holding was not an abandonment of *Dixie Pine's* all events test, but simply a narrow exception for purposes of § 535(b)(1). *Id.*

In the proceedings below, the *Metro Leasing II* court specifically disagreed with two aspects of the Fifth Circuit's decision. *See* Rusty Brewer, Note, *A Strain Between the Contested Tax Liability Accrual Doctrine and the Accumulated Earnings Tax:* Metro Leasing and Dev. Corp. v. Comm'r, 56 TAX LAW. 451, 454 (2003). First, the Tax Court examined the last sentence of Treas. Reg. 1.535–2(a)(1) ("[A]n unpaid tax which is being contested

is not considered accrued until the contest is resolved."), and concluded that the Fifth Circuit had erred by focusing on the word "unpaid." *Metro Leasing II*, 119 T.C. at 14–15. Instead, the Tax Court reasoned that emphasis should be placed on the word "contested," and that the regulation stands for the proposition that no deduction is allowed where liability is contested. *Id.* at 15. Although Metro Leasing argued that the Fifth Circuit's reading of this regulation was more equitable, the Tax Court saw no reason to treat "a *paid but contested* deficiency differently from one that is *unpaid and contested.*" *Id.* (emphasis in original). Thus the Tax Court concluded that the thrust of this regulation was to prevent the deduction of contested liabilities pursuant to settled principles of accrual, not to allow—by silent implication—the deduction of *paid* liabilities. *Id.; see also id.* at 23–26 (Halpern, J., concurring) (noting that the regulation's final sentence indicates the Secretary of the Treasury's intent to have the all events test apply to § 535(b)(1)).

Second, the *Metro Leasing II* court concluded that the Fifth Circuit's rule was not in accord with traditional principles of accrual accounting. *Id.* at 16. The Fifth Circuit admitted as much when it characterized its holding as a narrow exception to those principles. *Rutter Rex*, 853 F.2d at 1298.

As noted above, we conclude that the statutory language in this case is clear and that traditional principles of accrual should apply to § 535(b)(1). We must now consider whether an exception to these rules should apply for taxpayers who, like Metro Leasing, have paid their contested deficiencies while their appeal is pending.

■ The *Metro Leasing II* court discussed briefly how it interpreted the last sentence of Treas. Reg. 1.535.2(a)(1) in a different manner than had the Fifth Circuit in *Rutter Rex, see* 119 T.C. at 15, and the concurring Tax Court judge addressed this regulation and its validity in great detail, *see id.* at 23–26. Because we do not find the statute to be ambiguous, we are hesitant to place too much weight on one sentence in a regulation that says nothing about when a paid, but still contested, tax deficiency is considered to have accrued. *See Chevron, U.S.A., Inc.,* 467 U.S. at 843, 104 S.Ct. 2778.

The Fifth Circuit was willing to depart from the all events test to create what it saw as an equitable solution that would produce more realistic economic results. *See* Brewster, *supra,* at 455–56. However, when we sit in review of the tax system that Congress has established, it is not our place to tweak the rules by making exceptions where Congress did not clearly intend them simply because we believe the system is not fair to some taxpayers. As the Tax Court noted in *Doug–Long, Inc.,* the accumulated earnings tax is a penalty designed to discourage corporations from hoarding profits to avoid income tax. 73 T.C. at 78. We agree with the Tax Court that there is no evidence of Congress' desire to mitigate this penalty by reading a novel meaning into the word "accrual." *See id.*

Finally, we reject Metro Leasing's contention that the fact that the accumulated earnings tax is a penalty and is to be strictly construed supports an exception to traditional principles of accrual. *See Rutter Rex,* 853 F.2d at 1296 (citing *Ivan Allen Co.,* 422 U.S. at 626, 95 S.Ct. 2501). As the Supreme Court has noted, when a tax penalty is strictly construed it simply means that a taxpayer "is not to be subjected to [the] penalty unless the words of the statute plainly impose it." *Keppel v. Tiffin Sav. Bank,* 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 (1905). Here, Metro Leasing does not dispute that it is a

"mere holding or investment company" that is properly subject to the accumulated earnings tax. The only question is how to calculate the amount of tax, not whether it will be imposed.

We therefore hold that 26 U.S.C. § 535(b)(1) should be interpreted in accordance with the long-standing meaning of the word "accrual." Under this approach, Metro Leasing's 1995 tax liability did not accrue in the taxable year when it was originally assessed. At that time, all the events necessary to fix the fact and amount of the liability had not yet occurred because Metro Leasing was challenging the deficiency in proceedings before the Tax Court. *See Dixie Pine*, 320 U.S. at 519, 64 S.Ct. 364. The corporation's tax liability either accrued in 2001 when it was paid, or it has yet to accrue when appellate review finally concludes.[12]

### IV

The Tax Court did not err by permitting Metro Leasing to deduct only an additional $12,950 as a reasonable salary for the Valentes in 1995. It also properly interpreted 26 U.S.C. § 531(b)(1) and we affirm its conclusion that Metro Leasing cannot deduct the contested tax liability it paid in 2001 from the calculation of its 1995 accumulated taxable income.

**AFFIRMED.**

---

**12.** We express no opinion about which of these alternatives is correct. The Tax Court did not address whether the mechanism of 26 U.S.C. § 461(f) might apply to permit a deduction in 2001, the year of Metro Leasing's payment.