**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 14 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEFFREY K. BERGMANN; KRISTINE K. BERGMANN, <br><br> Petitioners - Appellants, <br><br> v. <br><br> COMMISSIONER OF INTERNAL REVENUE, <br><br> Respondent - Appellee. | No. 12-70259 <br><br> Tax Ct. No. 20894-05 <br><br> MEMORANDUM[*] |

Appeal from a Decision of the United States Tax Court

Argued and Submitted December 3, 2013
San Francisco, California

Before: GOULD and PAEZ, Circuit Judges, and HUFF, District Judge.[**]

Petitioners-Appellants Jeffrey and Kristine Bergmann appeal a decision by

the United States Tax Court holding that their amended return for 2001 was not a

qualified amended return ("QAR") under Treasury Regulation § 1.6664-2(c)(3)(ii),

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Marilyn L. Huff, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

making the Bergmanns liable for an accuracy-related penalty of $41,196 for their 2001 tax return. We have jurisdiction under 26 U.S.C. § 7482(a)(1). We review de novo the Tax Court's interpretation of a Treasury Regulation, *Metro Leasing Development Corp. v. CIR*, 376 F.3d 1015, 1021 (9th Cir. 2004), and we affirm.

Jeffrey Bergmann, a tax partner at KPMG, LLP, and his wife Kristine Bergmann used a tax strategy known as the "Short Option Strategy" ("SOS") that KPMG developed and promoted to clients. These SOS transactions artificially inflated the taxpayer's basis in foreign currency, allowing the taxpayer to claim falsely high losses or low profits on sales of that currency. The Bergmanns engaged in SOS transactions in 2000 and 2001. They timely filed their original 2001 joint tax return, claiming ordinary and long-term capital losses for the two transactions. The IRS served two summonses on KPMG on March 19, 2002 for its role in promoting SOS transactions. In March 2004, shortly after KPMG gave the IRS a list of SOS participants including the Bergmanns, they filed an amended return for 2001 removing all the previously-claimed losses and reporting and paying an additional $205,979 in taxes. At no point did the Bergmanns concede that the losses were improperly reported or foreclose themselves from taking another position on a later amended return.

The Tax Court held that under Treasury Regulation § 1.6664-2(c)(3)(ii), the IRS summonses to KPMG in 2002 was an event terminating the Bergmanns' ability to file a 2001 QAR under Treasury Regulation § 1.6664-2(c)(3). We agree. The Bergmanns argue that the Tax Court applied the updated, incorrect version of the relevant Treasury Regulation in its decision. We conclude, however, that there is no indication that the Tax Court applied the incorrect regulation. The Tax Court consistently cited Treasury Regulation § 1.6664-2(c)(3)(ii), the correct regulation, and gave a fair paraphrase of that regulation in its decision. For these reasons we reject the Bergmanns' assertion that the Tax Court erroneously applied the current regulation to their case.

The Bergmanns also argue that the Tax Court incorrectly interpreted Treasury Regulation § 1.6664-2(c)(3)(ii) when it concluded that the IRS summonses to KPMG was an event terminating their ability to file a QAR and thus avoid accuracy-related penalties for their 2001 tax return. The Bergmanns assert that the regulation's reference to 26 U.S.C. § 6700(a) in defining "person" requires that the Commissioner show that KPMG met the requirements of both § 6700(a)(1) and (a)(2)—that is, KPMG was promoting an abusive tax shelter.

3

However, the principles of statutory interpretation apply equally to regulatory interpretation, *Boeing Co. v. United States*, 258 F.3d 958, 967 (9th Cir. 2001), *aff'd*, 537 U.S. 437 (2003), and do not support that conclusion. The Bergmanns' interpretation of Treasury Regulation § 1.6664-2(c)(3)(ii) would impermissibly render its text and purpose nonsensical, and so we reject that argument. Section 6700(a) describes both the potentially liable persons and the fines those persons *will* pay for promoting abusive tax shelters. The statute lays out the offense in its entirety. However, Treasury Regulation § 1.6664-2(c)(3)(ii) applies when a qualifying person is "first contacted by the Internal Revenue Service concerning an examination of an activity described in section 6700(a)." The regulation explicitly limits the terminating event to when a person under § 6700 is "first contacted." The Bergmanns' interpretation of the regulation would have the contradictory result of denying KPMG's status as a "person" until it was clearly liable under § 6700(a), and yet the regulation only applies to the first contact by the IRS pursuant to an investigation of liability under that section.

We agree with the Tax Court that the terminating event described in Treasury Regulation § 1.6664-2(c)(3)(ii) is completed when the IRS first contacts a person concerning liability under § 6700 for an activity with respect to which the taxpayer claimed a tax benefit. This interpretation is supported by the purpose of

4

QARs: encouraging and rewarding taxpayers who voluntarily disclose abusive tax practices, thereby saving IRS resources. *See* T.D. 9186, 2005-1 C.B. 790. In this case, once KPMG had been told of an investigation and given the Bergmanns' names to the IRS, the record fails to demonstrate that their amended return was voluntary or saved IRS resources. For these reasons, we affirm the decision by the Tax Court.

**AFFIRMED.**