Stanley **PLATEK**, Laszlo Varga, Sam McCullough, Thomas Haney, Sr., Mark Rimlinger, Thomas Von Geis, Harry Wright, John Malezi, Frank Tripodi, and Nick Roman, Plaintiffs,

v.

**DUQUESNE CLUB**, a Pennsylvania corporation, Defendant.

Civil Action No. 94–901.

United States District Court,
W.D. Pennsylvania.

Dec. 13, 1995.

John R. Linkosky, Joseph H. Chivers, Pittsburgh, PA, for plaintiffs.

Robert Byer, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before this Court is defendant Duquesne Club's (Club) motion for summary judgment with regard to various claims asserted by plaintiffs. For the reasons stated in this opinion, the Court will grant the Club's motion in part and will deny it in part.

### I. Background

This action stems from the Club's alleged failure to pay plaintiffs minimum wages and proper overtime compensation and to keep proper payroll records as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* Briefly stated, the undisputed facts are as follows.

The Club is a private social organization located in Pittsburgh, Pennsylvania. The Club provides a variety of services to its members and guests of its members. In particular, Club members have the privilege of reserving private suites or banquet rooms at the Club's premises for private dining

functions. These "private parties" range from two-person dinners to wedding receptions, and they typically occur at lunch or dinner time. The Club also provides catering services for its members at other locations, including its members' homes and business offices. The Club's food and beverage director and two assistant food and beverage directors [1] are responsible for organizing and overseeing these functions.

Plaintiffs are employees of the Club who hold the position of "banquet captain." [2] Banquet captains function as head waiters at the Club's private parties and at the parties that the Club caters off-premises. Their job responsibilities include setting up dining tables and bars, transporting supplies, supervising wait staff, bartending, and waiting on tables.

Since their employment at the Club, the plaintiffs have been members of the Duquesne Club Employees Association Union (Union).[3] Over the years, the Union and the Club have negotiated a series of collective bargaining agreements, including an agreement which has been in effect since October 1, 1992. Pursuant to this contract, plaintiffs are paid an hourly wage of $5.37—$1.12 in excess of the current minimum wage of $4.25.

In addition to their hourly wages, plaintiffs receive tips from Club members and guests. In 1993, plaintiffs' average total earnings (i.e., wages and tips combined) before taxes were approximately $37,000; in 1992, the average figure was approximately $36,000; and in 1991, the average figure was approximately $35,700. (*See* defendant's Exhibit 22). Plaintiffs also receive various benefits from the Club, including life and health insurance.

The dispute currently before the Court centers around the Club's past and present "tip pooling" arrangements—arrangements under which tips collected at private parties are combined and divided among various Club employees. The mechanics of the tip pooling practices of the Club have varied over time. From June, 1991 to March, 1992, the banquet captains collected and distributed the tips among wait staff, including themselves, who worked a private party. Three management employees also shared in the tip pool. Although the banquet captains were allegedly displeased with the management employees' participation in their tip pool, they allegedly included them because of one manager's threats and intimidating actions.

Subsequently, in March, 1992, the Club and the Union entered into an amendment to the parties' collective bargaining agreement that slightly changed the prior tip pooling practices. Under the amendment, the parties agreed that the Club itself would take control over the three shares of the tip pool formerly given to the management employees, and in turn would distribute these shares to its managers as incentive compensation in its discretion.

Ultimately, as part of further negotiations between the Union and the Club, the Club took even greater control over the tip money received by its employees. A provision of a new collective bargaining agreement effective January 1, 1993, formalized the earlier March amendment insofar as it provided that three management employees will participate in the Club's tip pool; in actuality, the Club retains control over these three shares. In addition, the contract provides that the Club, instead of the banquet captains, will handle the accounting and distribution of all tip money.[4]

Partially as a result of the Club's increased role and participation in the tip pool, the plaintiffs initiated the instant litigation. The complaint alleges that the tip pooling practices previously described violate the minimum wage and overtime compensation provi-

---

1. The food and beverage directors were formerly referred to as the Club's maitre d's.

2. Plaintiff John Malezi was employed as a banquet captain prior to his separation from employment on June 2, 1994.

3. The Union has recently become affiliated with the Communications Workers of America Union.

4. The collective bargaining agreement made other major changes to the prior tip pooling practices, including the manner in which tips are paid to regular wait staff employees and bartenders, but these changes are not relevant for purposes of the Court's analysis.

sions of the FLSA, *see* 29 U.S.C. §§ 206 and 207, and that the Club violated the FLSA by failing to properly keep wage and hour records, *see* 29 U.S.C. § 211. The Club has filed a motion for judgment in its favor with regard to these claims.

The plaintiffs have also alleged that the Club violated the FLSA by failing to use the plaintiffs' compensation obtained at catered parties held off of the Club's premises when computing the plaintiffs' overtime compensation and that the plaintiffs were not compensated for various work that they performed before and after their shifts. The Club admits that issues of material fact remain with regard to these claims and, therefore, it does not seek summary judgment thereon.

## II. Discussion

Fed.R.Civ.P. 56(c) provides that judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In addition, Fed.R.Civ.P. 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

When deciding a motion for summary judgment, the threshold inquiry is whether the movant has met its initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Northern Insurance Co. v. Aardvark Associates,* 942 F.2d 189, 194 (3d Cir.1991). The evidence must be viewed in the light most favorable to the non-moving party. *O'Donnell v. United States,* 891 F.2d

1079, 1081–82 (3d Cir.1989). Once the initial burden has been met, the moving party will prevail if the evidence would support judgment as a matter of law in its favor. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir.1992).

The issues in this case require an interpretation of the FLSA. The FLSA is a remedial statute that Congress enacted to guarantee certain minimum labor standards. *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 335–36, 4 L.Ed.2d 323 (1960). More specifically, the FLSA "was designed to place a floor under wages and a ceiling over hours of employment," *Marshall v. Western Union Telegraph Co.,* 621 F.2d 1246, 1250 (3d Cir.1980), in order to alleviate labor conditions that are " 'detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.' " *Lyon v. Whisman,* 45 F.3d 758, 763 (3d Cir.1995) (*quoting* 29 U.S.C.A. § 202). "The substantive sections of the FLSA, narrowly focused on minimum wage rates and maximum working hours, bear out its ... purposes." *Id.* at 764.

### A. Plaintiffs' claims under § 6 of the FLSA

■ The Club initially moves for judgment in its favor with regard to plaintiffs' claims under § 6 of the FLSA. Section 6, the minimum wage provision, provides in pertinent part that:

> Every employer shall pay to each of his employees who in any work week is engaged in commerce or in the production of goods in commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages [of] not less than $4.25 an hour....

29 U.S.C. § 206(a)(1). The parties do not dispute that the plaintiffs are employees covered by this section.

Regulations implementing this minimum wage provision further provide that an employer must pay its employees a minimum.

wage "free and clear." 29 C.F.R. § 531.35. In other words, the minimum wage must be paid "finally and unconditionally." *Id.* The "free and clear" regulation specifically provides that:

The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any work week when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

*Id.* In sum, minimum wages must be paid to the employee without any requirement that the employee return such wages to the employer. *Id.; see generally Mayhue's Super Liquor Stores, Inc. v. Hodgson,* 464 F.2d 1196, 1197 (5th Cir.1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688 (1973).

Plaintiffs contend that the Club's practice of taking and retaining control over three shares of the tip pool violates the free and clear regulation described above and, therefore, violates § 6 of the FLSA. Plaintiffs first note that under applicable law, absent a valid agreement to the contrary, tips are owned by and are the property of the employees who receive them. *See, e.g., Williams v. Jacksonville Terminal Co.,* 315 U.S. 386, 403–04, 62 S.Ct. 659, 669–70, 86 L.Ed. 914 (1942). By requiring plaintiffs to turn over a portion of their tips to their employer, plaintiffs contend that the Club has violated the free and clear regulation insofar as plaintiffs are required to "kick-back" a portion of their property (i.e., their tips) for the employer's benefit. Plaintiffs conclude that a minimum wage violation has occurred in this case because when one subtracts the portion of their tips that were retained by the Club from their hourly wages, their hourly wages are re-

duced to below the applicable minimum standard.

Plaintiffs' argument is unpersuasive, however. First, although the free and clear regulation implementing § 6 provides that an employer may not require an employee to "kick-back" a part of his wages if the kickback reduces the employee's hourly wage to below the federal minimum, this "free and clear regulation" is .not applicable in this case. The FLSA and the applicable regulations clearly distinguish between payments that constitute "wages" and payments that constitute "tips." *See* 29 U.S.C. § 203(m); 29 C.F.R. §§ 531.27(c); 531.60(a). Because the plain language of the free and clear regulation only prevents the kick-back of *wages,* the prohibition simply does not apply to tips. The fact that no case law exists which has specifically applied the free and clear analysis to the kick-back of tips lends support to the Court's analysis.

Furthermore, even if tips were considered "wages" for purposes of the free and clear regulation, the evidence does not demonstrate that a violation of this regulation has occurred in this case. The free and clear regulation is only breached if a "kick-back" to an employer reduces the employee's hourly wage to below the minimum standard. Here, however, if the Court considers both the tips and hourly wages that the plaintiffs received for purposes of applying the regulation, it is clear that the plaintiffs have received more than minimum wage—even though the Club has participated in the tip pool. In fact, the plaintiffs' average compensation over the past three years was approximately $36,000, far in excess of the minimum standard.

Plaintiffs' argument that the Court should only consider the tips "kicked-back" to the employer—and not the tips actually received by the plaintiffs—when determining whether the Club's actions reduces the plaintiffs' hourly wage below the applicable minimum is not supported by the purpose of the regulations. In particular, the purpose of the minimum wage provision of the FLSA is to ensure that employees can maintain a minimum standard of living. *See, e.g. Lyon,* 45 F.3d at 763–64. Plaintiffs clearly receive compensa-

tion in excess of the minimum standard and are, therefore, not the type of employee that the free and clear regulation was intended to protect.

Although at first glance, allowing an employer to participate in a tip pool may appear to be inequitable and detrimental to an employee's maintenance of minimum labor standards, other provisions of the FLSA exist to ensure that a tipped employee actually receives the minimum wage. For instance, § 3(m), which allows an employer to take a "tip credit" and pay tipped employees only fifty percent of the applicable minimum wage, provides that an employer may not participate in a tip pool or otherwise take control over tips if the employer is claiming a tip credit. The reasoning behind § 3(m) is clear: if an employer is allowed to avoid its minimum wage obligation because its employees receive compensation in the form of tips, the employer should not be permitted to share in these tips because such sharing could result in the employee's receipt of less than the minimum wage. The situation before the Court is inapposite to the situation at issue under § 3(m),[5] however, because the Club does not claim a tip credit. Rather, the Club pays plaintiffs in excess of the minimum wage and, therefore, even if the plaintiffs and the Club had agreed that the Club could retain all of the plaintiffs' tips, the plaintiffs would still receive compensation in excess of the minimum standard—which is all that § 6 and the free and clear regulation require.

Finally, the Court notes that plaintiffs' entire argument with regard to the free and clear regulation is premised on the assumption that tips are the property of the employee. However, as plaintiffs themselves have recognized, tips are only the property of an employee absent an agreement to the contrary. Although the Court will not dwell on this issue, the plaintiffs' Union entered into contracts on the plaintiffs' behalf which specifically agreed to the Club or the Club's

managers taking control over three shares of the tip pool. Therefore, plaintiffs' assumption that all of their tips are their property is itself subject to question.[6]

The plaintiffs have also argued that the Club's tip pooling arrangement violates § 6 based upon a Department of Labor wage and hour opinion letter dated October 26, 1989, which indicates that tip pooling arrangements can violate the minimum wage provisions of the FLSA if (1) such pooling deprives a tipped employee of any amount of the tips that the employee actually received, and (2) the employer does not pay a sufficiently high cash wage to reimburse such employee for the loss, plus at least the minimum wage. (*See* plaintiffs' Exhibit H).

Although this opinion letter does indicate that the Club's tip pooling arrangements could constitute a violation of § 6, the opinion letter is not binding precedent upon this Court. See 29 C.F.R. § 531.25 ("The ultimate decisions on interpretations of the Act are [to be] made by the courts."). Further, although agency interpretations are entitled to deference, *see Chevron USA, Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), such deference is not appropriate where the agency's interpretation is not supported by the plain language and/or purpose of the statute or regulation at issue. *See, e.g., Director, Office of Workers Compensation Programs v. Barnes and Tucker Co.,* 969 F.2d 1524, 1527 (3d Cir. 1992); *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission,* 837 F.2d 600, 609 n. 6 (3d Cir.1988).

In this case, the Court finds that to the extent that the agency's opinion letter indicates that tip pooling arrangements can violate § 6, the interpretation is contrary to the language and purpose of the applicable regulation and, for the reasons previously dis-

---

**5.** *See* this Court's Memorandum Opinion entered October 14, 1994, in which the Court granted the Club's motion to dismiss plaintiffs' claims under § 3(m).

**6.** Plaintiffs attempt to avoid the collective bargaining agreement by noting that they cannot

waive their rights under the FLSA. While neither the Union nor the plaintiffs themselves could have agreed to the plaintiffs' receipt of less than the minimum wage, however, the plaintiffs can agree to give away their tips so long as they still receive the minimum wage.

cussed, the opinion letter will not be followed by this Court.[7]

For all of the reasons previously discussed, the Court will grant the Club's motion for summary judgment with regard to the plaintiffs' claims under § 6 that stem from the Club's tip pooling practices.

### B. Plaintiffs' claims under § 7 of the FLSA that relate to tip pooling

The Club has also moved for summary judgment with regard to plaintiffs' § 7 claims under the FLSA that are based upon the tip pooling practices previously discussed.[8]

■ Section 7(a) (1) of the FLSA requires employers to pay non-exempt employees who have worked in excess of forty hours per week overtime compensation equivalent to one and one-half times the employees' regular hourly rate of pay. 29 U.S.C. § 207(a)(1); *Marshall*, 621 F.2d at 1248. "Overtime pay, as required by the FLSA, has not been paid unless both straight time pay and overtime pay have been fully paid and have been paid based on an employee's regular pay." *Reich v. Midwest Body Corp.*, 843 F.Supp. 1249, 1252 (N.D.Ill.1994); *see also* 29 C.F.R. § 778.315. In other words, proper overtime compensation cannot be deemed paid unless and until the employee has been compensated at the regular rate of pay for the first forty hours worked. (See defendant's supplemental memorandum of law at p. 9; plaintiffs' reply brief at p. 25).

Here, plaintiffs argue that the Club did not pay them the correct overtime compensation with regard to their work at private parties because the plaintiffs never actually received their, contractually-guaranteed regular rate

of pay (currently $5.37 per hour). More specifically, plaintiffs once again rely on the free and clear regulation previously discussed and contend that they did not receive their "regular pay" because they were forced to "kick-back" their property (i.e., their tips) to their employer, and this kick-back had the effect of reducing their hourly wages to below their regular rate of pay.

■ Again, the Court is unpersuaded by the plaintiffs' free and clear analysis. The plaintiffs' overtime claims, like their minimum wage claims, are predicated on an assumption that the free and clear regulation previously discussed is applicable in this case. However, for the reasons set forth above, the diversion of tip money is simply not relevant in determining whether plaintiffs have received all of their "straight time" pay. Thus, because the Club has actually paid plaintiffs their contractually-agreed upon wage rate for their first forty hours of work, and one and one-half times that wage rate for hours worked in excess of forty, the plaintiffs' overtime compensation claim must fail.[9] Therefore, the Court finds that the Club's tip pooling practices do not amount to a violation of § 7 of the FLSA, and the Court will grant the Club's motion for summary judgment with regard to this claim.

### C. Plaintiffs' claim under § 11 of the FLSA

Finally, the Club has moved for summary judgment with regard to plaintiffs' claim under § 11 of the FLSA. That section requires that "every employer ... shall make, keep, and preserve such records of the persons employed by him and of the wages, hours,

---

**7.** Although this Court's memorandum opinion issued on October 14, 1994, did not preclude the possibility that the Court would apply the opinion letter in this case, the issue with regard to § 6 was not before the Court and any statement regarding § 6 and the opinion letter in the Court's Memorandum Opinion was purely *dicta*.

**8.** Although the Club's motion for summary judgment does not specifically address this claim, the Club raised this matter after plaintiffs made their position clear with respect to this claim in their brief in opposition to the defendant's motion for summary judgment. (*See* defendant's reply brief at pp. 6–8). After the Club's reply brief was

filed, the parties have each filed two supplemental memorandums addressing their respective positions in this regard. Therefore, the Court may address this matter at this time.

**9.** The Court notes that issues currently exist with regard (1) to whether the plaintiffs' performed work before and after their shifts for which they were not compensated and (2) to whether the Club failed to properly pay plaintiffs' overtime compensation with regard to their work at catered parties away from the Club's premises. The Court's statement is not meant to reflect on these issues.

and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). "An employer's failure to keep records in accordance with § 11(c) is unlawful under the Act." *Reich v. Chez Robert, Inc.*, 821 F.Supp. 967, 975 (D.N.J.1993), *vacated on other grounds*, 28 F.3d 401 (3d Cir.1994).

The Club argues that it is entitled to summary judgment on plaintiffs' claim under § 11 because plaintiffs' pretrial statement fails to specifically make mention of such a claim. Plaintiffs' pretrial statement does, however, refer to the FLSA's § 11 requirements. (*See* plaintiffs' pretrial statement at p. 13). Further, the Club's motion itself indicates that the Club is aware of the plaintiffs' claim in this regard. Accordingly, the Court finds that the plaintiffs' lack of a clearer explanation in their pretrial statement regarding their § 11 claim is not sufficient grounds for this Court to enter judgment in the Club's favor and, therefore, the Club's motion for summary judgment on this claim will be denied.

An appropriate Order will be issued.

### ORDER

AND NOW, this 13th day of December, 1995, upon consideration Defendant's Motion for Summary Judgment (document No. 30) filed in the above captioned matter on March 10, 1995, and upon further consideration of Defendant's Briefs in Support thereof and Plaintiffs' Responses in Opposition thereto, and for the reasons set forth in this Court's Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part, to wit:

1. Said Motion is GRANTED to the extent that judgment be, and hereby is, entered in favor of defendant and against plaintiffs with regard to plaintiffs' claims under § 6 of the FLSA that stem from the Club's tip pooling practices;

2. Said Motion is GRANTED to the extent that judgment be, and hereby is, entered in favor of defendant and against plaintiffs with regard to plaintiffs' claims under § 7 of the FLSA that stem from the Club's tip pooling practices; and

3. Said Motion is DENIED to the extent that defendant seeks judgment in its favor on plaintiffs' claim under § 11 of the FLSA.