Misty **CUMBIE,** on behalf of herself and all others similarly situated, Plaintiff–Appellant,

v.

**WOODY WOO, INC.,** an Oregon corporation, DBA Vita Café; Woody Woo II, Inc., an Oregon corporation, DBA Delta Café; Aaron Woo, an individual, Defendants–Appellees.

No. 08–35718.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 2009.

Filed Feb. 23, 2010.

Jon M. Egan, Lake Oswego, OR, argued the cause for the appellant and filed briefs.

Eric A. Lindenauer, Garvey Schubert Barer, Portland, OR, argued the cause for the appellees and filed a brief.

Maria Van Buren, United States Department of Labor, Washington, DC, argued on behalf of the Secretary of Labor as amicus curiae in support of the appellant. With her on the brief were Carol A. De Deo, Steven J. Mandel, and Paul L. Frieden.

Richard J. (Rex) Burch, Bruckner Burch PLLC, Houston, TX, filed a brief on behalf of the National Employment Lawyers Association as amicus curiae in support of the appellant. With him on the brief was Stefano Moscato, National Employment Lawyers Association, San Francisco, CA.

Eugene Scalia, Gibson, Dunn & Crutcher LLP, Washington, DC, filed a brief on behalf of the Nevada Restaurant Association as amicus curiae in support of the appellees. With him on the brief were Jesse A. Cripps, Jr. and Ann S. Robinson, Gibson, Dunn & Crutcher LLP, Los Angeles, CA; and Samuel P. McMullen and Erin McMullen, Snell & Wilmer LLP, Las Vegas, NV.

Kevin H. Kono, Davis Wright Tremaine LLP, Portland, OR, filed a brief on behalf of the Oregon Restaurant Association as amicus curiae in support of the appellees.

Before: DIARMUID F. O'SCANNLAIN and N. RANDY SMITH, Circuit Judges, and CHARLES R. WOLLE,[*] Senior District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether a restaurant violates the Fair Labor Standards Act, when, despite paying a cash wage greater than the minimum wage, it requires its wait staff to participate in a "tip pool" that redistributes some of their tips to the kitchen staff.

## I

Misty Cumbie worked as a waitress at the Vita Café in Portland, Oregon, which is owned and operated by Woody Woo, Inc., Woody Woo II, Inc., and Aaron Woo (collectively, "Woo"). Woo paid its servers[1] a cash wage at or exceeding Oregon's minimum wage, which at the time was $2.10 more than the federal minimum wage.[2] In addition to this cash wage, the servers received a portion of their daily tips. Woo required its servers to contribute their tips to a "tip pool" that was redistributed to all restaurant employees.[3] The largest portion

---

[*] The Honorable Charles R. Wolle, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. We use the term "server" to include the waiters and waitresses serving tables.

2. At the time Cumbie filed her complaint, the minimum wage in Oregon was $7.95, see Or. Rev.Stat. § 653.025(e); Minimum Wage: Questions and Answers, *available at* http://www.oregon.gov/BOLI/TA/T—FAQ—Minwage2008.shtml (last accessed Jan. 3, 2010), and the federal minimum wage was $5.85 per hour, see 29 U.S.C. § 206(a)(1)(A).

3. Neither Woo nor any managers participated in the tip pool.

of the tip pool (between 55% and 70%) went to kitchen staff (*e.g.*, dishwashers and cooks), who are not customarily tipped in the restaurant industry. The remainder (between 30% and 45%) was returned to the servers in proportion to their hours worked.

Cumbie filed a putative collective and class action against Woo, alleging that its tip-pooling arrangement violated the minimum-wage provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*[4] The district court dismissed Cumbie's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and Cumbie timely appealed.

## II

On appeal, Cumbie argues that because Woo's tip pool included employees who are not "customarily and regularly tipped employees," 29 U.S.C. § 203(m), it was "invalid" under the FLSA, and Woo was therefore required to pay her the minimum wage plus *all* of her tips. Woo argues that Cumbie's reading of the FLSA is correct only vis-à-vis employers who take a "tip credit" toward their minimum-wage obligation. *See id.* Because Woo did not claim a "tip credit,"[5] it contends that the tip-pooling arrangement was permissible so long as it paid her the minimum wage, which it did.

■ Although we ordinarily begin our analysis with the text of the relevant statute, we pause to elucidate a background principle that guides our inquiry: "In businesses where tipping is customary, the tips, *in the absence of an explicit contrary understanding,* belong to the recipient. Where, however, [such] an arrangement is made ..., *in the absence of statutory interference, no reason is perceived for its invalidity.*" *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397, 62 S.Ct. 659, 86 L.Ed. 914 (1942) (internal citations omitted) (emphasis added).[6]

*Williams* establishes the default rule that an arrangement to turn over or to redistribute tips is presumptively valid. Our task, therefore, is to determine whether the FLSA imposes any "statutory interference" that would invalidate Woo's tip-pooling arrangement. The question presented is one of first impression in this court.[7]

## A

Under the FLSA, employers must pay their employees a minimum wage. *See* 29

4. Cumbie also asserted several wage-and-hour violations under Oregon law but has abandoned them on appeal. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988).

5. Oregon law forbids tip credits. *See* Or.Rev. Stat. § 653.0355(3).

6. *Accord* 29 C.F.R. § 531.52 ("In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer."). Although the parties and amici debate whether this and other that Department of Labor regulations governing tips are still valid, we note that the Secretary of Labor has not bothered to amend them in over forty years. At any rate, because we conclude that the meaning of the FLSA's tip credit provision

is clear, we need not decide whether these regulations are still valid and what level of deference they merit. *See Metro Leasing and Development Corp. v. Comm'r of Internal Revenue*, 376 F.3d 1015, 1024 n. 10 (9th Cir.2004).

7. Cumbie suggests that various courts of appeals have already resolved this issue in her favor, but the cases she cites are inapposite, as they involve employers who satisfied their entire minimum-wage obligation out of tips. *See, e.g., Doty v. Elias*, 733 F.2d 720 (10th Cir.1984); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464 (5th Cir.1979); *Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir.1977). In other words, the employers in those cases took a tip credit, which is not the scenario we confront here.

U.S.C. § 206(a). The FLSA's definition of "wage" recognizes that under certain circumstances, employers of "tipped employees" may include part of such employees' tips as wage payments. *See id.* § 203(m). The FLSA provides in relevant part: [8]

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>>
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

*Id.*

### 1

We shall unpack this dense statutory language sentence by sentence. The first

sentence states that an employer must pay a tipped employee an amount equal to (1) a cash wage of at least $2.13,[9] plus (2) an additional amount in tips equal to the federal minimum wage minus such cash wage.[10] That is, an employer must pay a tipped employee a cash wage of at least $2.13, but if the cash wage is less than the federal minimum wage, the employer can make up the difference with the employee's tips (also known as a "tip credit"). The second sentence clarifies that the difference may not be greater than the actual tips received. Therefore, if the cash wage plus tips are not enough to meet the minimum wage, the employer must "top up" the cash wage. Collectively, these two sentences provide that an employer may take a partial tip credit toward its minimum-wage obligation.

The third sentence states that the preceding two sentences do not apply (*i.e.*, the employer may not take a tip credit) unless two conditions are met. First, the employer must inform the employee of the tip-credit provisions in section 203(m). Second, the employer must allow the employee to keep all of her tips, except when the employee participates in a tip pool with other customarily tipped employees.

### 2

■ Cumbie argues that under section 203(m), an employee must be allowed to retain all of her tips—except in the case of a "valid" tip pool involving only customarily tipped employees—regardless of whether her employer claims a tip credit. Essentially, she argues that section 203(m) has overruled *Williams*, rendering tip-re-

---

8. The first part of section 203(m) allows employers to include in wages the reasonable cost of board, lodging or "other facilities" furnished to employees under certain circumstances. 29 U.S.C. § 203(m). This part of the statute is not implicated here.

9. *See* 29 U.S.C. §§ 203(m), 206(a)(1) (1996).

10. *See* 29 U.S.C. § 206(a)(1).

distribution agreements presumptively invalid. However, we cannot reconcile this interpretation with the plain text of the third sentence, which imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees. A statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X,* period.

If Congress wanted to articulate a general principle that tips are the property of the employee absent a "valid" tip pool, it could have done so without reference to the tip credit. "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). Therefore, we decline to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous.[11]

Here, there is no question that Woo's tip pool included non-customarily tipped employees, and that Cumbie did not retain all of her tips because of her participation in the pool. Accordingly, Woo was not entitled to take a tip credit, nor did it. *See Richard v. Marriott Corp.,* 549 F.2d 303, 305 (4th Cir.1977) ("[I]f the employer does not follow the command of the statute, he gets no [tip] credit."). Since Woo did not take a tip credit, we perceive no basis for concluding that Woo's tippooling arrangement violated section 203(m).[12]

**B**

■ Recognizing that section 203(m) is of no assistance to her, Cumbie disavowed reliance on it in her reply brief and at oral argument, claiming instead that "[t]he rule against forced transfer of tips actually originates in the minimum wage section of the FLSA, 29 U.S.C. § 206." Section 206 provides that "[e]very employer shall pay to each of his employees ... wages" at the prescribed minimum hourly rate. *Id.* § 206(a).

While section 206 does not mention tips, let alone tip pools, Cumbie maintains that a Department of Labor ("DOL") regulation elucidates the meaning of the term "pay" in such a way as to prohibit Woo's tip-pooling arrangement. She refers to the regulation which requires that the minimum wage be "paid finally and unconditionally or 'free and clear,' " and forbids any " 'kick[ ]-back' ... to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. The "free and clear" regulation provides as an example of a prohibited kick-back a requirement that an employee purchase tools for the job, where such purchase "cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

---

**11.** Cumbie and amici rely extensively on legislative history of the 1974 amendments to the FLSA, *see* Pub.L. No. 93–259, § 13, 88 Stat. 55 (1974), to support their contention that section 203(m)'s tip-credit conditions were intended to be freestanding requirements. Of course, "we do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States,* 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

**12.** Cumbie also argued that even if Woo's tip pool were legal, it violated the FLSA by requiring her to contribute a greater percentage of her tips than is "customary and reasonable." However, we have no reason to disagree with the Secretary that the "customary and reasonable" requirement, which appears only in opinion letters, a handbook, and a fact sheet, contravenes "court decisions and the unequivocal statutory language." Updating Regulations Issued Under the Fair Labor Standards Act, 73 Fed.Reg. 43654, 43660 (July 28, 2008). Accordingly, we decline to recognize any such requirement. *See Kilgore v. Outback Steakhouse,* 160 F.3d 294, 302–03 (6th Cir.1998).

According to Cumbie, her forced participation in the "invalid" tip pool constituted an indirect kick-back to the kitchen staff for Woo's benefit, in violation of the free-and-clear regulation. As she sees it, the money she turned over to the tip pool brought her cash wage below the federal minimum in the same way as the tools in the regulation's example. The Secretary of Labor agrees, asserting that "if the tipped employees did not receive the full federal minimum wage plus all tips received, they cannot be deemed under federal law to have received the minimum wage 'free and clear,' and the money diverted into the invalid tip pool is an improper deduction from wages that violates section [20]6 of the Act."

Cumbie acknowledges that the applicability of the "free and clear" regulation hinges on "whether or not the tips belong to the servers to whom they are given." This question brings us back to section 203(m), which we have already determined does not alter the default rule in *Williams* that tips belong to the servers to whom they are given only "in the absence of an explicit contrary understanding" that is not otherwise prohibited. 315 U.S. at 397, 62 S.Ct. 659. Hence, whether a server owns her tips depends on whether there existed an agreement to redistribute her tips that was not barred by the FLSA.

Here, such an agreement existed by virtue of the tippooling arrangement. The FLSA does not restrict tip pooling when no tip credit is taken. Therefore, only the tips redistributed to Cumbie from the pool ever belonged to her, and her contributions to the pool did not, and could not, reduce her wages below the statutory minimum. We reject Cumbie and the Secretary's interpretation of the regulation as plainly erroneous and unworthy of any deference,[13] *see Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), and conclude that Woo did not violate section 206 by way of the "free and clear" regulation.

### III

Finally, Cumbie argues against the result we reach because "[a]s a practical matter, it nullifies legislation passed by Congress." Her argument, as we understand it, is that Woo is functionally taking a tip credit by using a tip-pooling arrangement to subsidize the wages of its non-tipped employees. The money saved in wage payments is more money in Woo's pocket, which is financially equivalent to confiscating Cumbie's tips via a section 203(m) tip credit (with the added benefit that this "de facto" tip credit allows Woo to bypass section 203(m)'s conditions).

Even if Cumbie were correct, "we do not find [this] possibility ... so absurd or glaringly unjust as to warrant a departure from the plain language of the statute." *Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 519 U.S. 248, 261, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997). The purpose of the FLSA is to protect workers from "substandard wages and oppressive working hours." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (citing 29 U.S.C. § 202(a)). Our conclusion that the FLSA does not prohibit Woo's tip-pooling arrangement does not thwart this purpose. Cumbie received a

---

**13.** Their interpretation is also inconsistent with the regulation itself, which prohibits kickbacks that reduce the *wages* paid below the federal minimum. Even assuming Cumbie's tips belonged to her *ab initio*, they were not wages under the FLSA because Woo did not take a tip credit. *See* 29 U.S.C. § 203(m); *see also Platek v. Duquesne Club*, 961 F.Supp. 835, 838 (W.D.Pa.1995), *aff'd without opinion by Platek v. Duquesne Club*, 107 F.3d 863 (3d Cir.1997).

wage that was far greater than the federally prescribed minimum, plus a substantial portion of her tips. Naturally, she would prefer to receive *all* of her tips, but the FLSA does not create such an entitlement where no tip credit is taken. Absent an ambiguity or an irreconcilable conflict with another statutory provision, "we will not alter the text in order to satisfy the policy preferences" of Cumbie and amici. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002).

IV

The Supreme Court has made it clear that an employment practice does not violate the FLSA unless the FLSA *prohibits* it. *Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Having concluded that nothing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is taken, we perceive no statutory impediment to Woo's practice. Accordingly, the judgment of the district court is

**AFFIRMED.**