FILED
United States Court of Appeals
Tenth Circuit

June 30, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BRIDGETTE MARLOW, on behalf of
herself and all similarly situated persons,

     Plaintiff - Appellant,

v.

THE NEW FOOD GUY, INC., a Colorado
corporation d/b/a Relish Catering &
Events; BRETT TUCKER,

     Defendants - Appellees.

------------------------------

UNITED STATES OF AMERICA,

     Amicus Curiae.

No. 16-1134

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CV-01327-JLK)**

_____

Brian D. Gonzales, The Law Offices of Brian D. Gonzales, PLLC, Fort Collins,
Colorado, for Plaintiff-Appellant.

Jennifer L. Gokenbach, Gokenbach Law, LLC, Denver, Colorado, for Defendants-
Appellees.

John S. Koppel, Attorney, Appellate Staff (Benjamin C. Mizer, Principal Deputy
Assistant Attorney General, and Robert C. Troyer, Acting United States Attorney, and
Mark B. Stern, with him on the brief), U.S. Department of Justice, Washington, D.C., for
Amicus Curiae.

_____

Before **HARTZ** and **EBEL**, Circuit Judges.[*]

_____

**HARTZ**, Circuit Judge.

_____

Plaintiff Bridgette Marlow sued her employer The New Food Guy, Inc., d/b/a

Relish Catering, under the Fair Labor Standards Act (FLSA). The FLSA requires

employers to pay a minimum wage of $7.25 per hour, *see* 29 U.S.C. § 206(a)(1)(C), plus

time and a half for overtime, *see* 29 U.S.C. § 207(a)(1). Relish paid Ms. Marlow $12 an

hour and $18 an hour for overtime. So what is the problem? Ms. Marlow claims that

Relish was obligated to turn over to her a share of all tips paid by catering customers.

She relies on the tip-credit provision of the FLSA, which is directed to employers who

satisfy their minimum-wage obligations in part with tips retained by their employees,

and on a regulation promulgated by the Department of Labor (DOL) purportedly

interpreting that provision. We are not persuaded. We hold that the tip-credit provision

clearly does not apply in this case and that the regulation is beyond the DOL's authority.

An employer that pays its employees a set wage greater than the minimum wage does not

violate the FLSA when it retains tips paid by customers.

## I.      BACKGROUND

Ms. Marlow worked for Relish from October 2013 to November 2014. Relish

---

[*] The Honorable Neil Gorsuch participated in the oral argument but not in the decision. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. *See* 28 U.S.C. § 46(d); *see also United States v. Wiles*, 106 F.3d 1516, 1516 n.*(10th Cir. 1997) (noting that this court allows remaining panel judges to act as a quorum to resolve an appeal). In this case, the two remaining panel members are in agreement.

paid workers like Ms. Marlow a base wage of $12 an hour ($18 for overtime).[1] At the end of each catering event, Relish accepted tips from customers paying their final bill. But Relish did not supplement the hourly wage of its workers with any share of the gratuity.

Ms. Marlow sued Relish and Brett Tucker, a manager and part owner, in the United States District Court for the District of Colorado, alleging that Relish had violated the minimum-wage provisions of the FLSA.[2] The district court granted the defendants' motion for judgment on the pleadings. Ms. Marlow moved for reconsideration, citing a DOL regulation that prohibits employers from retaining employee tips. The court denied the motion, implicitly determining that the regulation was invalid. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

As we shall see, under the clear text of the FLSA, restrictions on employers' use of tips apply only when the employer uses tips received by the employee as a credit against the employee's minimum wage. If an employer pays more than the minimum wage without regard to tips, the FLSA does not restrict the employer's use of tips. The

---

[1] Ms. Marlow has claimed that Relish paid her less than $12 an hour, but only in the sense that Relish allegedly recouped the funds to pay these wages, at least in part, from tips paid by catering customers. In Ms. Marlow's brief opposing Relish's motion for judgment on the pleadings, she stated, in response to Relish's showing that she had earned a $12 hourly wage, that this "evidence is not dispositive on this issue because it does not demonstrate whether or not any portion of [Ms. Marlow's] $12/hour wage was offset/reimbursed by tips." Aplt. App. at 71.

[2] Ms. Marlow originally also brought statutory claims under the Colorado Wage Claim Act and a common-law breach-of-contract claim. But we need not address those claims because she dismissed them in response to Relish's motion to dismiss.

regulation categorically barring employers from retaining tips is invalid because it exceeded DOL's authority.

## II.    DISCUSSION

Ms. Marlow advances two arguments for reversal:  (1) that Relish violated the FLSA's tip-credit restrictions when it retained the tips, and (2) that Relish violated a DOL regulation prohibiting employers from retaining tips.  We begin with the statutory argument.

### A. Tip-Credit Restrictions

Ms. Marlow's set wage of $12 an hour was well above the $7.25 federal minimum.  In spite of this, she claims that Relish violated federal minimum-wage law because Relish retained all tips.  She argues that paying a set wage of more than $7.25 per hour but retaining tips can be the economic equivalent of paying a below-minimum wage.  For instance, if she received her $12 hourly wage but Relish retained $11 in tips for each hour worked, then the bottom line would be the same as if Relish took none of Ms. Marlow's tips but paid her a $1 wage.  Money, of course, is fungible.  So from Relish's perspective, these scenarios are economic equivalents.

Supreme Court precedent and the language of the FLSA, however, clearly bar that approach.  The Act protects against "substandard wages"—that is, compensation that falls below the "'minimum standard of living necessary for health, efficiency and general well-being of workers.'"  *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)).  In general, the FLSA's concern is only with the wage payments that employees receive, not with tracing the sources of the money

4

ultimately used by the employer to pay the wage. In particular, early in the history of the FLSA the Supreme Court held that employers could use the tips paid to their employees toward satisfying their minimum-wage obligations. *See Williams v. Jacksonville Terminal Co.*, 315 U.S. 386 (1942). The Court said that the FLSA leaves to the parties to contract on who owns the tips paid to employees. *See id.* at 397 ("Where . . . an arrangement is made by which the employee agrees to turn over the tips to the employer, in the absence of statutory interference, no reason is perceived for its invalidity."); *id.* at 408 (because the FLSA does not address whether tips should be treated as wages, "the employer was left free, in so far as the Act was concerned, to work out the compensation problem in his own way"). Under *Williams*, Ms. Marlow's "economic" analysis is beside the point. Relish had the right to make it a condition of employment that it would own all tips paid by catering customers. That being the case, Ms. Marlow and other employees would have no right to claim that "their" tips should be subtracted from the $12-an-hour wage to determine if they had received the required minimum wage.

To be sure, the FLSA has been amended since *Williams*. Ms. Marlow argues that the 1974 amendment to § 3(m) of the Act, Pub. L. No. 89-259, § 139(e), 88 Stat. 55, 64–65 (1974) (codified as amended at 29 U.S.C. § 203(m)), which added the tip-credit provision, undermined the *Williams* approach. She is correct that the amendment deals with tips. But the scope of the amendment does not extend to this case. The tip-credit provision states:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—

5

(1) the cash wage paid such employee which for purposes of such determination shall be not less than [$2.13, a special minimum for tipped employees]; and

(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) [$2.13] and [$7.25, the usual federal minimum].

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. *The preceding 2 sentences shall not apply with respect to any tipped employee unless* such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m) (emphasis added). The statute defines *tipped employee* as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *Id.* § 203(t).

This provision gives employers of "tipped employees"—like hotels and restaurants—the option of paying a reduced hourly wage of $2.13 so long as their workers receive enough tips to bring them to the $7.25 minimum. If there are not enough tips, the employer must pay the difference; if there are more than enough, the excess tips go to employees. This court has held that if an employer counts tips toward the minimum wage, it must pay the $2.13 cash minimum. In *Doty v. Elias*, 733 F.2d 720, 722 (10th Cir. 1984), the employer did not pay any of the plaintiffs an hourly wage or salary but allowed them to keep all the tips they received. He argued that he had complied with the FLSA because the amount of the tips exceeded the minimum wage. We rejected the argument, stating that § 203(m) "ensure[s] that an employer may not use the tips of a

tipped employee to satisfy more than a specified percentage of the Act's minimum hourly wage." *Id.* at 724; *see Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281 (10th Cir. 2017).

Ms. Marlow complains that Relish never told her it was exercising the tip credit, nor did it let her receive any tips. Fair enough. But her argument that this violated the FLSA rests on a flawed premise: that Relish invoked the § 203(m) tip credit in the first place. Relish always paid Ms. Marlow a wage well above the $7.25 minimum, and that wage was not dependent on the amount of tips left by customers. Section 203(m) imposes no restrictions on an employer who provides a set wage above the $7.25-an-hour minimum.

All that § 203(m) does is permit a limited tip credit and then state what an employer must do *if it wishes to take that credit*. Ms. Marlow reads the statutory provision as also requiring that *all* employers *always* give all tips to employees (perhaps through tip pooling). But it does not say that. What it says is that the employer must so distribute tips *if* it wishes the first two sentences of the tip-credit provision to apply. The tip credit "shall not apply . . . unless" the employer complies with two statutory conditions: (1) notice to employees and (2) payment of all tips to employees. 29 U.S.C. § 203(m). When the employer does not take the tip credit, it must do only what all employers must do—pay the full minimum wage. *See Cumbie v. Woody Woo*, *Inc.*, 596 F.3d 577, 581 (9th Cir. 2010) (rejecting the same argument raised here, stating, "A statute that provides that a person must do X *in order to achieve* Y does not mandate that a person must do X, period."). In particular, although it would have been very easy to do so, the 1974 amendment says nothing about ownership of tips in general; it does not

7

declare that tips are always the property of the employee. *See id.* ("If Congress wanted to articulate a general principle that tips are the property of the employee absent a 'valid' tip pool, it could have done so without reference to the tip credit.").[3] The other courts that have reviewed § 203(m) have read it as we do. *See Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 448 (4th Cir. 2015) ("§ 203(m) does not state freestanding *requirements* pertaining to all tipped employees, but rather creates rights and obligations for employers attempting to use tips as a credit against the minimum wage." (internal quotation marks omitted)); *Cumbie,* 596 F.3d at 580–81; *Aguila v. Corp. Caterers II, Inc.*, 199 F. Supp. 3d 1358, 1361 (S.D. Fla. 2016); *Malivuk v. Ameripark, LLC*, No. 1:15-CV-2570-WSD, 2016 WL 3999878, at *4 (N.D. Ga. July 26, 2016); *Brueningsen v. Resort Express Inc.*, No. 2:12-CV-00843-DN, 2015 WL 339671, at *5 (D. Utah Jan. 26, 2015); *Mould v. NJG Food Serv. Inc.*, Civil No. JKB–13–1305, 2014 WL 2768635, at *5 (D. Md. June 17, 2014); *Stephenson v. All Resort Coach, Inc.*, No. 2:12–CV–1097 TS, 2013 WL 4519781, at *5, *8 (D. Utah Aug. 26, 2013). Because the statutory language is clear, there is no call for us to review legislative history. *See Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994).[4]

---

[3] Just such a change was recently proposed in the House of Representatives. *See* H.R. Res. 15, 115th Cong. § 3(b) (2017) (amending § 203(m) by "striking 'of this subsection, and all tips received by such employee have been retained by the employee' and inserting 'of this subsection. Any employee shall have the right to retain any tips received by such employee'").

[4] Further supporting our conclusion is the FLSA's remedial provision. Workers can sue to prosecute violations of the law, but their recovery is limited to the amount of their unpaid minimum wages (including overtime). Under 29 U.S.C. § 216(b), "[a]ny employer who violates the [minimum wage provisions] or [the overtime provisions] shall

Relish paid Ms. Marlow far more than the minimum wage without regard to tips, never taking the tip credit.  Her claim under § 203(m) must therefore fail.

### B.  DOL Regulation

Congress has empowered the DOL to promulgate "*necessary* rules, regulations, and orders with regard to the [1974 FLSA] amendments."  Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (emphasis added).  In 2011 the DOL sought to exercise this power by promulgating the following regulation:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA.  The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m):  As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52 (2011).

Ms. Marlow relies on this regulation.  To be sure, it supports her position that she should be paid a portion of the tips that customers paid to Relish.  But did the DOL have the authority to promulgate it?

---

be liable to the employee or employees affected in the amount of their unpaid minimum wages."  Thus, one of our sister circuits concluded that a private plaintiff who had been paid the minimum wage had no remedy when the only alleged FLSA violation involved § 203(m)'s tip restrictions.  *See Trejo,* 795 F.3d at 446.  Indeed, the government's amicus brief contends that Ms. Marlow has no right of action because the FLSA lets workers bring suit only for "minimum wage" violations and Ms. Marlow is raising a free-standing claim to tips, "divorced from a minimum wage claim or an overtime claim."  Br. for the United States as Amicus Curiae, at 11.  At the least, the FLSA's limited private right of action suggests that the statute's focus is on ensuring employees receive a minimum wage, not that they keep their tips.

9

Federal agencies may promulgate rules to fill "ambiguities" or "gaps" in statutes. *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). But the regulation here is a step too far. To begin with, § 203(m) is not ambiguous in this respect. As explained above, it clearly applies only when the employer uses tips received by the employee as a credit against the employee's minimum wage. *See, e.g.*, *Trejo*, 795 F.3d at 448; *Cumbie,* 596 F.3d at 580–81. It does not apply to employers who do not take the tip credit and pay employees a set wage greater than the minimum wage.

In its amicus brief the government argues that § 203(m) is "silent" on the question of employers who do not take the tip credit, and that this silence is a "gap" the DOL was authorized to fill with its regulation. One of our sister circuits has accepted this argument. *See Or. Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1086–89 (9th Cir. 2016), *petition for cert. filed*, 16-920. We respectfully disagree.

Agencies have a limited rulemaking role. "[A]n administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000). Agencies may "exercise discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the unambiguously expressed intent of Congress." *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2445 (2014) (internal quotation marks omitted). The leading Supreme Court opinion on the subject speaks of the authority of administrative agencies to resolve an issue when "the statute is silent" or leaves a "gap." *Chevron*, 467 U.S. at 837, 842–43. But when the Court has spoken of such silences or gaps, it has been considering undefined terms in a statute or a statutory

10

directive to perform a specific task without giving detailed instructions.

Three recent opinions by the Court illustrate the point. In *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 212, 217–18 (2009), the issue was the permissibility of an EPA regulation that used cost-benefit analysis to determine whether a polluter complied with the statutory requirement that antipollution standards reflect the "best technology available" (BTA). The statute was silent regarding whether cost-benefit analysis could be used to determine whether the BTA test was satisfied. But it was also silent "with respect to all potentially relevant factors." *Id*. at 222. In the Court's view, "it [was] eminently reasonable to conclude that [the statute's] silence [was] meant to convey nothing more than a refusal to tie the agency's hands as to whether cost-benefit analysis should be used, and if so to what degree." *Id.* The EPA regulation needed to set forth some factors to determine whether the statute's BTA test was satisfied, and statutory silence on what those factors should be left this aspect of the definition of BTA to the EPA.

In *EPA v. EME Homer City Generation, L.P.*, "[t]he statute require[d] States to eliminate those 'amounts' of pollution that 'contribute significantly to non-attainment' in downwind States." 134 S. Ct. 1584, 1603–05 (2014) (quoting 42 U.S.C. § 7410(a)(2)(D)(i)). But the statute did not say how the EPA should apportion responsibility when multiple upwind States contributed to the nonattainment. The Court wrote: "[W]e read Congress' silence [which the Court described as a "statutory gap"] as a delegation of authority to EPA to select from among reasonable options." *Id.* at 1604 & n.18. The agency was given a specific task to perform but there were gaps in the

11

instructions regarding how to perform it.

Similarly, in *Cuozzo Speed Tech., LLC v. Lee*, 136 S. Ct. 2131, 2136 (2016), a patent holder challenged a regulation promulgated by the U.S. Patent and Trademark Office with respect to "inter partes review," under which a third party can request the Patent Office to reexamine a patent that has already been issued. The regulation required the Patent Office to construe such third-party claims as broadly as reasonably possible. *See id.* A unanimous Court recognized that "[t]he statute contains . . . a gap. No statutory provision unambiguously directs the agency to use one standard [to review claims] or the other." *Id*. at 2142. But a statutory provision granted the Patent Office the authority to issue "'regulations . . . establishing and governing inter partes review.'" *Id.* (quoting 35 U.S.C. § 316(a)(4)). Again, the agency was given a specific statutory duty but there were gaps in the instructions on how to perform it. *See also Mourning v. Family Publ'ns Serv., Inc*., 411 U.S. 356, 361–62 (1973) (Truth in Lending Act explicitly gave Federal Reserve Board very broad powers to "prescribe regulations to carry out the purposes" of the Act).

In this case there is no such gap or silence with respect to a specific task assigned the DOL. The government does not point to any statutory language directing the DOL to regulate the ownership of tips when the employer is not taking the tip credit. The government relies instead on the *absence* of any statutory directive to the contrary. But as stated by the en banc D.C. Circuit, "Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the

12

Constitution as well." *Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc) (as amended). "[I]t is only in the ambiguous 'interstices' *within* the statute where silence warrants administrative interpretation, not the vast void of silence on either side of it." *Perez*, 816 F.3d at 1094 (Smith, J., dissenting).

In sum, § 203(m)'s "silence" about employers who decline the tip credit is no "gap" for an agency to fill. Instead, the text limits the tip restrictions in § 203(m) to those employers who take the tip credit, leaving the DOL without authority to regulate to the contrary.

## III.   CONCLUSION

We **AFFIRM** the district court's entry of judgment on the pleadings.