Opinion by Judge PREGERSON; Dissent by Judge N.R. SMITH.
OPINION
PREGERSON, Senior Circuit Judge:
Under the Fair Labor Standards Act of 1938 (“FLSA”), as amended in 1974, an employer may fulfill part of its hourly minimum wage obligation to a tipped employee with the employee’s tips. 29 Ú.S.C. § 203(m). This practice is known , as taking a “tip credit.” Section 203(m) of the FLSA obligates employers who take a tip credit to (1) give notice to its employees, and (2) allow its employees to retain all the tips they receive, unless such employees participate in a valid tip pool. Id. Under section 203(m), a tip pool is valid if it is comprised exclusively of employees who are “customarily and regularly” tipped. Id.
In both cases before this court, Employer-Appellees did not take a tip credit against their minimum wage obligation; they paid their tipped employees at least the federal minimum wage. Employer-Appellees required their employees to participate in tip pools. Unlike the tip pools contemplated by section 203(m), however, these tip pools were comprised of both customarily tipped employees and non-customarily tipped employees.
In 2010, we held in Cumbie v. Woody Woo, Inc. that this type of tip pooling arrangement does not violate section 203(m) of the FLSA, because section 203(m) was silent as to employers who do not take a tip credit. 596 F.3d 577, 583 (9th Cir.2010). In 2011, shortly after Cumbie was decided, the Department of Labor (“DOL”) promulgated a formal rule (“the 2011 rule”) that extended the tip pool *1083 restrictions of section 203(m) to all employers, not just those who take a tip credit. 76 Fed.Reg. 18,832, 18,841-42 (April 5, 2011).
The United States District Court for the District of Oregon held that Cumbie foreclosed the DOL’s ability to promulgate the 2011 rule and that the 2011 rulé was invalid because it was contrary to Congress’s clear intent. Or. Rest. & Lodging v. Solis, 948-F.Supp.2d 1217, 1218,' 1226 (D.Or. 2013). The United States District Court for the District of Nevada followed suit. Cesarz v. Wynn Las Vegas, LLC, No. 2:13-cv-00109-RCJ-CWH, 2014 WL 117579, at *3 (D.Nev. Jan. 10, 2014). For thé reasons set forth below, we reverse both district court decisions.
Background
In 1937, President Franklin Delano Roosevelt challenged Congress “to devise ways and means, of insuring to all our able-bodied working men and women a fair day’s pay for a fair day’s work. A self-supporting and self-respecting democracy can plead no justification.for ... chiseling workers’ wages____” ELR.Rep. No. 93-913 at 5-6 (1974). One year later,,, in 1938, Congress passed the FLSA. 29 U.S.C. § 201. “[T]he FLSA was designed to give specific minimum protections to individual workers and to éñsure that each employee covered by the Act ... would be protected from the ‘evil of overwork as well as underpay.’ ” Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (quoting Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)) (internal quotation marks omitted). The FLSA was intended to provide “greater dignity and security and economic freedom for millions of American workers.” H.R.Rep. No. 93-913 at 6 (1974) (quoting President Kennedy).
In 1942, the Supreme Court in Williams v. Jacksonville Terminal Co. addressed the question whether tips are a component of an employee’s wages under the FLSA. 315 U.S. 386, 388, 62 S.Ct. 659, 86 L.Ed. 914 (1942). The petitioners, who worked as “red caps” or baggage handlers, earned a combination of wages and tips that equaled the FLSA prescribed minimum wage. Id. Théy sued their employer, arguing that the FLSA required that they be paid the minimum wage without regard to their earnings from tips. Id. at 389, 62 S.Ct. 659. The Court, held that “where tipping is customary, the tips, in the absence of an explicit-contrary understanding, belong to the recipient.” Id. at 397, 62 S.Ct. 659. However, when “an arrangement is made by which the employee agrees to turn over the tips to the* employer, in the absence of statutory interference,'no reason is perceived for its invalidity.” Id. Because the baggage handlers continued to work aftér being notified that tips would constitute part of their wages, the Court held that they accépted this new compensation arrangement. Id. at 398, 62 S.Ct. 659.
After Jacksonville Terminal, the FLSA underwent a series of amendments, which “extended the Act’s coverage.” H.R. Rep. 93-913 at 4. These amendments raised the federal minimum wage and expanded the FLSA’s coverage to various public and private sector employees. In 1966, the FLSA was amended to include hotel and restaurant employees. 73 Fed.Reg. 43,-654, 43,659 (July 28, 2008). To alleviate the new minimum wage obligations of hotels and restaurants, “the 1966 amendments. also. provided for the first time, within section [20]3(m)’s definition of a ‘wage,’ that an employer could utilize a limited amount of its employees’ tips as a credit against its minimum wage obligations ... through a so-called ‘tip credit.’” 76 Fed.Reg. at 18,838.
*1084 In 1974, the FLSA was again amended. First, Congress expressly delegated to the DOL the broad authority -“to prescribe necessary rules, regulations, and orders” to implement the FLSA amendments of 1974. Pub.L. No. 93259, § 29(b), 88 Stat. 55 (1974). Second, Congress revised the language in 29 U.S.C. § 203(m) to read:
In determining the wage an employer is required to paya tipped employee, the amount paid such employee by the employee’s employer shall be an amount equal to—
(1) the cash wage paid such employee which for. purposes of such determination shall not be less , than the cash wage required to be. paid such an employee on [August 20,1996]; and .
(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title,[1]
The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, éxcept that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and .regularly receive tips.
29 U.S.C. § 203(m). As amended in 1974, section 203(m) required employers to give their employees prior notice of their intent to use a tip credit and “made it clear that tipped employees must receive at least minimum wage and must generally retain any tips.” 73 Fed.Reg. at 43,659.
In 2010, we held in Cumbie v. Woody Woo, Inc. that section 203(m) does not restrict the tip pooling practices of employers who- do not take tip credits. 596 F.3d at 583. The employer, Woody Woo, Inc., paid its servers a cash wage that exceeded the federal minimum wage but required its servers to contribute their tips to a “tip pool” that included. employees who were not regularly or customarily tipped. Id. at 578-79. The servers claimed that Woody Woo’s tip pooling practice violated section 203(m) because the practice included non-customarily tipped employees. Id. at 579. We applied the “default” rule from Jacksonville Terminal, and found that “in the absence of statutory’ interference, no reason is perceived for [Woody Woo’s tip pooling practice’s] invalidity.” Id. (quoting Jacksonville Terminal, 315 U.S. at 397, 62 S.Ct. 659) (emphasis and internal quotation marks omitted).
In Cumbie, we read section 203(m) to apply only to employers who did take a tip *1085 credit; for these employers, section 203(m) is considered “statutory interference.” 596 F.3d at 581. In contrast, for an employer that meets its minimum wage obligation without taking a tip credit, section 203(m) is silent; therefore, there is no statutory interference. Without statutory interference, Jacksonville Terminal’s default rule controlled, and weconcluded that Woody Woo’s tip pooling practice was valid. Id. at 583.
In 2008, two years before the Cumbie decision, the DOL published a notice of proposed rulemaking and request for comments under the Administrative Procedure Act, 5 U.S.C. §§ 556-557. The lengthy notice set forth specific revisions to sections that governed tipped employees in order “to incorporate ... legislative history, subsequent court decisions, and the [DOL’s] interpretations” into the FLSA. 73 Fed.Reg. at 43,659. More than ten different organizations submitted comments. These comments and the Cumbie decision disclosed that section 203(m)’s tip pooling restrictions could be read to apply only to employers who take a tip credit. The comments also revealed that section 203(m) could encourage abuse in an already “high-violation industry.” See 76 Fed.Reg. at 18,840-42.
In 2011, in response to these comments and the statutory silence that Cumbie exposed, the DOL promulgated new rules to make it clear that tips are the property of the employee. Id. at 18,841-42; 29 C.F.R. §§ 531.52, 531.55, 531.59. Specifically, the DOL revised 29 C.F.R. § 531.52 by replacing the sentence:
In the absence of an agreement to the contrary between' the recipient and a thiqd party, a tip becomes the property of the person in recognition of whose service it is presented, by the customer,
with the following language:
Tips are the property of the employee whether or not the employer-has taken a tip credit, under section [20]3(m) of the FLSA. The employer is prohibited from using an employee’s tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section [20]3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool. -
Compare 32 Fed.Reg. 13,575, 13,580 (Sept. 28, 1967), with 29 C.F.R. § 531.52 (2011). The 2011 rule expressly prohibits the use of a tip pool that violates section 203(m) regardless of whether an employer uses a tip credit.
These revisions to 29 C.F.R. § 531.52 are thé subject of the two cases before us. The Oregon Restaurant and Lodging Association, consisting of restaurants, taverns, and one individual, brought suit against ‘the DOL, challenging the validity of the '2011 rule and seeking to enjoin its enforcement. Later, a group of casino dealers brought suit against their employer, Wynn Las Vegas, LLC, challenging Wynn’s tip pooling practice as violating the 2011 rule. In both cases, the employers paid the employees at least the federal minimum wage and did not take a tip credit. The employers also instituted tip pools, in which customarily tipped employees, i.e., servers and casino dealers, were required to share tips with non-customarily tipped employees, i.e., kitchen staff and casino floor supervisors. Both district courts sided with the employers, relying in large part on our holding in Cumbie.[2] The DOL and the casino dealers appealed.
*1086 Discussion
I. Standard of Review
We review a district court’s grant of summary judgment de novo. Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell, 729 F.3d 1025, 1035 (9th Cir.2013). We also review a district court’s grant of a motion to dismiss de novo. Fayer v. Vaughn, 649 F.3d 1061, 1063-64 (9th Cir. 2011).
We review the . validity of an agency’s regulatory interpretation of a statute under the two-step framework set forth in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[3] The first step is to, ask, “has [Congress] directly spoken to the, precise question at issue.” Id. at 842, 104 S.Ct. 2778. If Congress’s intent is clear, then that is the end of our inquiry. Id. at 842-43, 104 S.Ct. 2778. If, however, “the statute is silent or ambiguous with respect to the specific issue,” we proceed to step two and ask if the agency’s action is “based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778. Even if we believe the agency’s construction is not the best construction, it is entitled to “controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.” Id. at 844, 104 S.Ct. 2778; see also Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs. (“Brand X”), 545 U.S. 967, 980, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). ...,
II. Analysis
When the Oregon district court and the Nevada district court conducted them Cheurón analysis, both held that Cumbie left “no room” for the DOL to promulgate its 2011 rule and thus granted Oregon Restaurant & Lodging’s motion for summary judgment, Or. Rest. & Lodging, 948 F.Supp.2d at 1226, and Wynn’s motion to dismiss, Cesarz, 2014 WL 117579, at *3. We disagree with the district courts’ applications of Cumbie and their Chevron anal-yses.
A. Chevron Step One
The precise question before this court is whether the DOL may regulate the tip pooling practices of employers who do not take a tip credit. The restaurants and casinos argue that we answered this question in Cumbie. We did not.
Our task in Cumbie was to decide whether a restaurant’s tip pooling practice violated the FLSA. 596 F.3d at 578. We did not hold that the FLSA unambiguously and categorically protects the practice in question. Rather, we held that “nothing in the text purports to restrict” the practice in question. Id. at 583. In reaching this holding, we relied on Christensen, in which the. “Supreme Court ... made clear that an employment practice does not violate the FLSA unless the FLSA prohibits it.” Id. (citing Christensen v. Harris Cty., 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d *1087 621 (2000)). Christensen illustrates the crucial distinction between statutory language that affirmatively protects' or prohibits a practice and statutory language that is silent about that practice.
In Christensen, the plaintiffs-employéés worked a substantial amount of unpaid overtime for their employer, Harris County, for which the employees accumulated “compensatory time” in lieu of cash compensation at a rate of one and a half hours for every hour of overtime worked. 529 U.S. at 579-80, 120 S.Ct. 1655., The FLSA expressly authorized the use of the compensatory time but also set a statutory cap on the amount of compensatory time an employee could accrue, after which the employer would be required to pay monetary compensation for every additional hour of overtime worked. Id. To avoid having to pay large sums of monetary overtime compensation, Harris County enacted a policy whereby it could force its employees to use théir compensatory time so that they would not reach the statutory cap. Id. at 580-81, 120 S.Ct. 1655. The employees sued and argued that Harris County’s policy violated a provision of the FLSA that required employers to reasonably accommodate employee requests to use compensatory time. Id. at 581, 120 S.Ct. 1655 (citing 29 U.S.C. § 207(o)(5)).
The Supreme Court rejected the employees’ argument because “no relevant statutory provision expressly or implicitly prohibits” the employer’s policy. Id. at 588, 120 S.Ct. 1655. As we held in Cum-bie, the Court in Christensen held that the employer’s policy did not violate the FLSA because nothing in the FLSA prohibited the employer’s policy. Id. at. 585-86, 120 S.Ct. 1655. The Court reasoned that “[bjecause the statute is' silent on this issue and because Harris County’s policy is entirely compatible with [the statute],” there was no violation. Id. at 585, 120 S.Ct. 1655 (emphasis added). Thus, just as we did in Cumbie, the Court in Christensen construed the FLSA’s silence in favor of the employer.
But, critically, the Court in Christensen did not preclude the DOL from enacting future regulations that prohibited the'challenged policy. Indeed, the Court suggested that were the agency to enact future regulations, Chevron deference would apply. See id. at 586-87, 120 S.Ct. 1655. The Court noted that “[o]f course, the framework of deference set forth in Chevron does apply to an agency interpretation contained in a regulation. ’ But in this case the Department of Labor’s regulation does not address the issue of compélled compensatory time,” Id. at 587, 120 S.Ct. 1655. The Court also acknowledged that the DOL had issued an opinion letter on the subject, but noted that an interpretation in an opinion letter is not entitled to Chevron deference because it is “not one arrived at after, for example, a formal adjudication or notice-and-comment rule-making.”- Id. Five Justices joined this portion of the Court’s opinion, including Justice Souter, who filed a single-sentence concurrence:
I join the opinion of the Court on the assumption that it does not foreclose' a reading of the Fair Labor Standards Act of 1938 that allows the Secretary of Labor to issue regulations limiting forced use. ;
Id. at 589, 120 S.Ct. 1655 (Souter, J., concurring). The Court’s comments regarding Chevron deference, along with Justice Souter’s concurrence, suggest that the DOL, by regulation, could prohibit the very practice the Court held to be neither explicitly nor implicitly prohibited by the FLSA. Following that reasoning, Cumbie should not be read to foreclose the DOL’s ability to subsequently, issue a regulation prohibiting the challenged tip pooling practice.
*1088 Here, the Oregon district court, the Nevada district court, the parties, and the dissent overlook the part of Christensen that discussed Chevron deference and Judge Souter’s concurrence. Instead, the district courts, the parties, and the dissent focus their attention on the rule from Brand X.
In Brand X, the Supreme Court held that “[a] court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.” 545 U.S. at 982, 125 S.Ct. 2688. Relying on Brand X, the restaurants and casinos argued that Cumbie trumps the 2011 rule because Cumbie relied on the “clear” language, of the FLSA. The district courts adopted this position. Or. Rest. & Lodging, 948 F.Supp.2d at 1223; Cesarz, 2014 WL 117579 at *3.
But as Christensen strongly suggests, there is a distinction between court decisions that interpret statutory commands and court decisions that interpret statutory silence. Moreover, Chevron itself distinguishes between statutes that directly address the precise question at issue and those for which the statute is “silent.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778. As such, if a court holds that a statute unambiguously protects or prohibits certain conduct, the court “leaves no room for agency discretion” under Brand X, 545 U.S. at 982, 125 S.Ct. 2688. However, if a court holds that a statute does not prohibit conduct because it is silent, the court’s ruling leaves room for agency discretion under Christensen.
Cumbie falls precisely into the latter category of cases—cases grounded in statutory silence. When we decided Cumbie, the DOL had not yet promulgated the 2011 rule. Thus, there was no occasion to conduct a Chevron analysis in Cumbie because there was no agency interpretation to analyze.[4] The Cumbie analysis was limited to the text of section 203(m). After a careful reading of section 203(m) in Cumbie, we found that “nothing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is taken” and therefore there was “no statutory impediment” to the practice. 596 F.3d at 583. Applying the reasoning in Christensen, we conclude that section 203(m)’s clear silence as to employers who do not take a tip credit has left room for the DOL to promulgate the 2011 rule. Whereas the restaurants, casinos, and the district courts equate this silence concerning employers who do not take a tip credit to “repudiation”, of future regulation of such employers, we decline to make that great leap without more persuasive evidence. See United States v. Home Concrete & Supply, LLC, — U.S. —, 132 *1089 S.Ct. 1836, 1843, 182 L.Ed.2d 746 (2012) (“[A] statute’s silence or ambiguity as to a particular issue means that Congress has ... likely delegated] gap-filling power to the agency[.]”); Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 222, 129 S.Ct. 1498, 173 L.Ed.2d 369 (2009) (“[S]ilence is meant to convey nothing more than a refusal to tie the agency’s hands....”); S.J. Amoroso Constr. Co. v. United States, 981 F.2d 1073, 1075 (9th Cir.1992) (“Without language in the statute so precluding, [the agency’s challenged interpretation], it must be said that Congress has not spoken to the issue.”).
In sum, we conclude that step one of the Chevron analysis is satisfied because the FLSA is silent regarding the tip pooling practices of . employers who do not take a tip credit. Our decision in Cumbie did not hold otherwise.
B. Chevron Step Two
Having found that the statute is silent as to the precise question at issue, we continue to step two. At Chevron step two, we must determine if the DOL’s interpretation is reasonable. Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778. This is a generous standard, requiring deference “even if the agency’s reading differs from what the court believes is the best statutory interpretation.” Brand X, 545 U.S. at 980, 125 S.Ct. 2688. We may reject an agency’s construction only if it is arbitrary, capricious, or manifestly .contrary to the statute. Chevron, 467 U.S. at 844, 104 S.Ct. 2778. To determine whether the DOL’s interpretation is reasonable, “we look to the plain and sensible meaning of the statute, the statutory provision in the context of the whole statute and ease law, and to the legislative purpose and intent.” Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency, 526 F.3d 591, 605 (9th Cir.2008) (citation omitted).
 The DOL promulgated the 2011 rule after taking into consideration numerous comments and- our holding in Cumbie. The AFL-CIO, National Employment Lawyers Association, and the Chamber of Commerce all commented' that section 203(m) was either “confusing” or “misleading” with respect to the ownership of tips. 76 Fed.Reg. at 18840-41. The DOL also considered our reading of section 203(m) in Cumbie and concluded that, as written, 203(m) contained a “loophole” that allowed employers to exploit the FLSA- tipping provisions. Id. at 18841. It was certainly reasonable to conclude that clarification by the DOL was needed. The DOL’s clarification—the 2011 rule—was a reasonable response to these comments and relevant case law.
The legislative history of the FLSA supports the DOL’s interpretation of section 203(m) of the FLSA. An “authoritative source for finding the Legislature’s intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of .those Congressmen [and women] involved in- drafting and studying proposed legislation.” Garcia v. United States, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (citation and internal quotation marks omitted). On February 21, 1974, the Senate Committee published its views on the 1974 amendments to section 203(m). S.Rep. No. 93690 (1974).
Employer-Appellees argue that the report reveals an intent contrary- to the DOL’s interpretation ’because the report states that an “employer will lose the benefit of [the tip credit] exception if tipped employees are required to share their tips with employees who do not-. customarily and regularly receive -tips[.]” In other words, Appellees contend that Congress viewed the ability to take.a tip credit as a benefit that came with - conditions and *1090 should .an employer fail to meet these conditions, such employer would be ineligible to reap the benefits of taking a tip credit, lyhile this is a fair interpretation of the statute, it is a leap too far to conclude that Congress clearly intended to .deprive the DOL the ability to later apply similar conditions on employers who do not take a tip credit.
Moreover, the surrounding text in the Senate Committee report supports the DOL’s reading of section 203(m). The Committee reported that the 1974 amendment “modifies section [20]3(m) of the Fair Labor Standards Act by requiring ... that all tips received be paid out to tipped employees.” S.Rep. No. 93-690, at 42. This language supports the DOL’s statutory construction that “[t]ips are the property of the employee whether or not the employer has taken a tip credit.” 29 C.F.R. § 531.52. In the same report, the Committee wrote that “tipped employeefs] should have stronger protection,” and reiterated that a “tip is ... distinguished from payment of a charge ... [and the custom'er] has the right to determine who shall be the recipient of the gratuity.’’ S.Rep. No. 93690, at 42.
In 1977, the Committee again reported that “[tjips are not'wages, and under the 1974 amendments tips must be retained by the employees ... and cannot be paid to the' employer dr otherwise used by the employer to offset his wage obligation, except to the extent permitted by section [20]3(m).” S.Rep. No. 95-440 at 368 (1977) (emphasis added). The use of the word “or” supports the DOL’s interpretation of the FLSA because it implies that the only acceptable use by an employer of employee tips is a tip credit.
Additionally, we find that the purpose of the FLSA does not support the view that Congress clearly intended to permanently allow employers that do not take a tip credit to do whatever they wish with their employees’ tips. The district courts’ reading that the FLSA provides “specific statutory protections” related only to “substandard wages and oppressive working hours” is too narrow. As previously noted, the FLSA is a broad and remedial act that Congress has frequently expanded and extended.
Considering the statements in the relevant legislative history and the purpose and structure of the FLSA, we find that the DOL’s interpretation is more closely aligned with Congressional intent, and at the very least, that the DOL’s interpretation is reasonable.
Conclusion
To be clear, we have no quarrel with Cumbie v. Woody Woo Inc., 596 F.3d 577 (9th Cir.2010). Our conclusion with respect to Cumbie is only that its holding was grounded in statutory silence. Following Christensen v. Harris Cty., 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), we find that Cumbie does not foreclose the DOL’s ability to regulate tip pooling practices of employers who do not take a tip credit.
Applying Chevron, we conclude that Congress has not addressed the question at issue because section 203(m) is silent as to the tip pooling practices of employers who do not take a tip credit. There is no convincing evidence that Congress’s silence; in this context, means anything other than á refusal to tie the agency’s hands. In exercising its discretion to regulate, the DOL promulgated a rule that is consistent Vdth the FLSA’s language, legislative history, and purpose.
Therefore, having decided that the regulation withstands Chevron review, we reverse both judgments and remand for proceedings consistent with this opinion.
REVERSED and REMANDED.

. In other words, under section 203(m) there are two components of the employer’s -wage obligation to tipped employees: the employer’s cash wage obligation to the employee and the employee’s tips. The combination of the employer’s cash Wage and the employee’s tips must equal at least the federal minimum wage. Currently, the employer’s minimum cash wage obligation to the employee is $2.13 per hour and the federal minimum wage is $7.25per hour.
If the employee earns at least $5,12 per hour in tips, then the employer has no further cash wage obligation because the employer’s minimum wage obligation of $2.13 plus the employee's tips of at least $5.12 equals the minimum wage. In this example, the employer would be taking a tip credit of $5.12 per hour.
If the employee earns less than $5.12 per hour in tips, the employer would be responsible for making up the difference between the tip credit and the minimum wage. For example, if an employee receives $1.00 per hour in tips, the employer would be required to pay $6.25 per hour. In this example, the employer would be taking a tip credit of $1.00 per hour.

. In Oregon, the district court granted summary judgment in favor of the Oregon Restaurant and Lodging Association. In Nevada, the district court granted Wynn’s motion to dismiss under 12(b)(6) for failure to state a claim.

. At Chevron step zero, we ask whether the Chevron framework applies at all. An "administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.” United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). In 1974, Congress granted the Secretary of Labor the authority to "prescribe necessary rules, regulations, and orders with regard to the [1974] amendments” to the FLSA, which included section 203(m). Pub.L. No. 93-259, § 29(b), 88 Stat. 55, 76. The DOL exercised its rulemaking authority within its substantive field when it promulgated the 2011 rule. This is sufficient to satisfy the Chevron step zero inquiry. See City of Arlington v. FCC, — U.S. —, 133 S.Ct. 1863, 1874, — L.Ed.2d — (2013).

. In Cumbie, after citing Jacksonville' Terminal for the “background principle” that an arrangement to turn over or redistribute tips is valid "in the absence of statutory interference,” we noted that we "need not decide whether” the DOL’s over forty-year-old regulations governing tips '"are still valid and what level of deference they merit” "because we conclude that the meaning of the FLSA’s tip credit provision is clear.” 596 F.3d at 579 & n. 6. However, the DOL regulations at the time did not specifically .address the issue of employers who require tip pooling and do not take a tip credit. See 32 Fed.Reg. at 13,580; see also, Christensen, 529 U.S. at 587, 120 S.Ct. 1655. Moreover, contrary to the dissent’s assertion, our characterization in Cum-bie of the FLSA’s tip credit provision as "clear” does not necessarily foreclose agency discretion. What was "clear” in Cumbie was that the FLSA’s tip credit provision did not impose any "statutory interference” that would invalidate tip pooling when no tip credit is taken—i'.e., that the FLSA was silent regarding this practice.